BRUNETTI, Circuit Judge:
Appellants Arthur and Jenny Scovis (“Debtors”) filed a Chapter 13 petition in Bankruptcy. Appellee Christen Brun Henrichsen (“Henrichsen”) moved to dismiss the petition, arguing, among other things, that Debtors’ aggregate unsecured debts exceed the $250,000 statutory limitation for eligibility. The bankruptcy court denied Henrichsen’s motion to dismiss, and confirmed the plan. The Bankruptcy Appellate Panel (“BAP”) reversed the bankruptcy court and remanded for factual findings on two issues. See In re Scovis, 231 B.R. 336 (BAP 9th Cir.1999). Despite the remand, Debtors have appealed the BAP’s determination.
I. Background
Debtors filed a Chapter 11 petition in February 1994. At the time, Debtors were attorneys actively practicing law under the law partnership of Scovis and Sco-vis. The case was converted to Chapter 7 in August of 1994, and then discharge was granted on March 13,1995.
During the Chapter 7 case, creditor Christen Brun Henrichsen obtained a judgment declaring Debtors’ debt to him, on a state court judgment obtained in 1993, non-dischargeable under 11 U.S.C. § 523(a)(6). In an unpublished memorandum disposition, this Court affirmed.
In September 1995, Arthur Scovis underwent quadruple bypass surgery and was also diagnosed with severe insulin-resistant diabetes. Soon after, Debtors filed a Chapter 13 petition. Debtors voluntarily dismissed the petition in March 1996 because they wished to resolve cer *979 tain claim litigation outside of the Chapter 13 arena, intending to re-file later if necessary.
The second and current Chapter 13 petition was filed on October 25, 1996. An amended petition was filed on November 8, 1996, in which the “Nature of Debt” was changed from “Business” to “Non-Business,” the estimated number of creditors was decreased, the estimated liabilities were increased, and the signature of their attorney was added. The only schedule of debts filed by Debtors are those submitted with the amended petition.
In the “Real Property” schedule, Schedule A, Debtors valued their residence at $325,000, encumbered by a first trust deed in favor of Great Western Bank of $249,026.91 along with the Henrichsen judgment lien of $208,000. In the “Property Claimed As Exempt” schedule, Schedule C, Debtors listed a $100,000 homestead exemption, allowed under California law. See Cal.Civ.Proc.Code § 704.730(a)(3) (1996). Henrichsen was listed again, this time under the “Creditors Holding Secured Claims” schedule, Schedule D, as having $75,973.09 secured by the residence. A priority claim of $6,000 for IRS payroll taxes, and general unsecured claims of $40,499.83 were listed on the “Creditors Holding Unsecured Priority Claims” and “Creditors Holding Unsecured Nonpriority Claims” schedules, Schedules E and F, respectively.
In addition, Debtors, under Schedule D, listed as secured a debt of $4,136 to Mary Scovis, Arthur Scovis’s mother, for a loan she made to Debtors for the purchase of an automobile. However, no written security agreement was ever executed, nor was Mary Scovis ever listed as a lienholder on the title to the car. About a year after the petition date, while the confirmation was being contested before the bankruptcy court, Debtors filed a declaration from Mary Scovis in which she purportedly waived any claim on the loan.
Before the bankruptcy court, Henri-chsen objected to confirmation of Debtors’ Chapter 13 plan on several grounds. He asserted that Debtors did not propose their plan in good faith; and specifically, that Debtors were misusing the automatic stay to avoid a non-dischargeable judgment, that their schedules were inaccurate, and that their proposed payments were inadequate. Thereafter, Debtors amended Schedule F to delete three creditors who had been paid by insurance or other sources, which lowered the general unsecured debt owed from $40,499.83 to $22,919.85. According to the numbers, the deletion of the three creditors should have resulted in an overall general unsecured debt reduction of $3,779.98, not $17,579.98. A comparison of Schedule F and Amended Schedule F show that Debtors altered the amount they owed for 1991 Federal income taxes and penalties from $25,000 down to $11,200. Oddly, there is no indication in the record that Debtors actually paid to the IRS the $13,800 difference. It is the combined $13,800 and $3779.98 figures that reflect the general unsecured debt reduction of $17,579.98. Furthermore, on Debtors’ motion, Henrichsen’s judgment lien against their residence was avoided by order entered on April 23,1997.
In September 1997, Henrichsen further objected to confirmation, arguing that Debtors fail to meet Chapter 13 eligibility requirements. At a hearing held October 20, 1997, the bankruptcy court confirmed Debtors’ Chapter 13 plan. In deciding that Debtors met the statutory debt limits set forth in 11 U.S.C. § 109(e), the bankruptcy court treated Henrichsen’s lien as partially secured by the value of Debtors’ home in excess of the first deed of trust, notwithstanding the homestead exemption. The court also concluded that Henrichsen *980 did not meet his burden of proof to overcome Debtors’ showing that their Chapter 13 plan had been proposed in good faith. On November 14, 1997, the bankruptcy court filed a written order reiterating its October 20,1997 eligibility ruling.
Henrichsen moved for reconsideration, arguing that the bankruptcy court had never ruled on his objection to Debtors’ expenses. The court agreed to entertain argument on that issue at a continued confirmation hearing, and in January 1998 conditioned confirmation on the reduction of some budget items, but denied Henri-chsen’s objection to confirmation. On February 10, 1998, Debtors filed an amended Chapter 13 plan, reflecting those reductions in expense items. Henrichsen again objected to confirmation. At a hearing held March 9, 1998, the bankruptcy court confirmed Debtors’ amended plan and entered an order to that effect on March 17,1998.
On appeal, the BAP determined that Debtors’ homestead exemption rendered Henrichsen’s claim completely unsecured for purposes of § 109(e) eligibility. Furthermore, the BAP found that if the $4,136 debt owed to Mary Scovis is considered unsecured, then the total unsecured debt would total $251,903.07. See Scovis, 231 B.R. at 343. The BAP used the following figures in arriving at this total: (1) Henri-chsen Debt, $218,847.22; (2) General Unsecured Debt, $22,919.85; (3) Priority Unsecured Debt (IRS Payroll Taxes), $6,000; and (4) Mary Scovis Debt, $4,136. The BAP reversed the bankruptcy court’s confirmation of the Chapter 13 plan, and remanded the case to the bankruptcy court to make factual determinations as to whether the Mary Scovis debt is unsecured and “for findings regarding [Debtors’] good faith if they are eligible” under § 109(e).
II. Standard of Review
We review decisions of the BAP de novo. See In re Filtercorp, Inc., 163 F.3d 570, 576 (9th Cir.1998). The bankruptcy court’s findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. Id.
III. Jurisdiction
We have jurisdiction to review final orders of the BAP under 28 U.S.C. § 158(d). See In re Kelly, 841 F.2d 908, 911 (9th Cir.1988). The BAP renders a final order when it affirms or reverses a bankruptcy court’s final order. Id. However, the BAP’s order is ordinarily not final when the BAP remands for further factual findings related to a central issue raised on appeal. Id.
Given the unique nature of bankruptcy proceedings, however, we have taken a “pragmatic” approach by balancing several policies in determining whether a remand order may be considered final, including: (1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) systemic interest in preserving the bankruptcy court’s role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm. See Lundell v. Anchor Constr. Specialists, 223 F.3d 1035, 1038 (9th Cir.2000).
We have acknowledged two narrow exceptions to the general finality rule. We may assert jurisdiction even though the BAP has remanded a matter for factual findings on a central issue “if that issue is legal in nature and its resolution either (1) could dispose of the case or proceedings and obviate the need for factfinding; or (2) would materially aid the bankruptcy court in reaching its disposition on remand.” Id.
Debtors raise three issues on appeal. First, they contest the BAP’s determination that, due to the homestead exemption, *981 Henrichsen’s entire claim is unsecured. Second, they argue that the $4,136 Mary Scovis automobile loan should not be classified as unsecured debt. Third, they contend that the IRS payroll tax should be disregarded since it was erroneously included in the schedules and because the tax has since been paid.
Here, jurisdiction hinges on the Mary Scovis claim since it is the only claim that was both remanded to the bankruptcy court for further inquiry and appealed to this Court. Because Debtors’ unsecured debt obligation, as determined by the BAP, barely exceeds $250,000, the bankruptcy court’s findings on remand as to the Mary Scovis claim could result in Chapter 13 eligibility.
This is one of those rare instances where we may assert jurisdiction even though the BAP has remanded a matter for factual findings on a central issue. By appealing the Mary Scovis debt, Debtors have implicated an important legal question that would likely dispose of the case and obviate the need for further factfinding. See LundeH 223 F.3d at 1038. In short, this legal question is: in deciding whether Debtors’ aggregated unsecured debt is within the $250,000 statutory limit for Chapter 13 eligibility, may the bankruptcy court look beyond the originally filed schedules in so calculating? Debtors would have us believe that the Mary Scovis debt should not enter the determination because it was withdrawn a year after the petition was filed. To agree with this argument is to implicitly condone looking beyond the originally filed schedules to determine eligibility. This timing issue infects the entire eligibility calculation, and will likely obviate the need for further fact finding on the Mary Scovis debt. For instance, although the original schedules listed $40,499.83 in general unsecured debt, the BAP used a figure of $22,919.85 from Amended Schedule F, reflecting the amount of general unsecured debt remaining after $17,579.98 had purportedly been paid off subsequent to the filing of the schedules. Debtors also argue that the IRS payroll taxes should be removed from consideration since that debt has now been satisfied, even though they were listed on the originally filed schedules.
Having found jurisdiction, we now proceed to examine the issues on appeal.
IV. Chapter 13 Eligibility
A. Timing of Eligibility
11 U.S.C. § 109(e) states that “[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 ... may be a debtor under chapter 13 of this title.” The BAP’s decision purports to endorse In the Matter of Pearson, 773 F.2d 751, 757 (6th Cir.1985), in which the Sixth Circuit held that “Chapter 13 eligibility should normally be determined by the debtor’s schedules checking only to see if the schedules were made in good faith.” However, the BAP quickly qualifies its endorsement by stating that a “ ‘bankruptcy court should look past the schedules to other evidence submitted when a good faith objection to the debtor’s eligibility has been brought by a party in interest.’ ” Scovis, 231 B.R. at 341 (quoting In re Quintana, 107 B.R. 234, 239 n. 6 (BAP 9th Cir.1989), aff'd, 915 F.2d 513 (9th Cir.1990)). Although we affirmed the BAP in Quintana, we assumed without argument that Chapter 12 eligibility should be decided using the date of debtor’s petition. See Quintana, 915 F.2d at 515 n. 2 (“The parties do not dispute the use of the date of Debtors’ petition for the purpose of determining Debtors’ eligibility under Chapter 12.”).
*982 In tallying up the various unsecured debt in the Scovis’s petition, however, it becomes entirely unclear what law the BAP is applying. See Scovis, 231 B.R. at 342-43. For the Henrichsen debt, the BAP used the debt at the time the petition was filed, yet went beyond the schedules to consider accrued interest; for the general unsecured debt, the BAP used a figure that was nearly half that of the debt listed on the originally filed schedules; for the Mary Scovis debt, the BAP remanded but gave no instruction as to whether Mary Scovis’s declaration, submitted a year after the initial petition, and which purported to waive any claim to unsecured debt, should be included in the bankruptcy court’s fact finding consideration on remand. See id. at 343.
In In re Slack, 187 F.3d 1070, 1073 (9th Cir.1999), we recently considered the timing aspect of § 109(e) for eligibility determination purposes. There, we held that a final judgment entered in state court in an insurer’s civil action against debtor, after the debtor’s Chapter 13 petition was filed, could not be considered in deciding the amount of debt owed to the insurer for purposes of determining eligibility for relief. See id. at 1073.
Prior to filing for bankruptcy relief, Slack was a defendant in a tort action in which a California state judge had entered a tentative decision that Slack was jointly and severally liable to plaintiff Wilshire in the amount of $659,971. Soon after, Slack filed for bankruptcy under Chapter 13. Creditor Wilshire argued that Slack was ineligible for Chapter 13 relief because the state court’s tentative ruling established that Slack had a noncontingent, liquidated, unsecured debt which exceeded the $250,000 statutory limit. Slack, on the other hand, argued that this debt was un-liquidated. The parties had stipulated to the amount of damages Wilshire actually suffered before the state and the bankruptcy courts, which totaled $255,954. Based on the stipulation of damages, the bankruptcy court dismissed Slack’s petition, finding that his noncontingent, liquidated, unsecured debt exceeded the statutory limit. See id. at 1072.
By the time Slack reached this Court on appeal, the state court had entered final judgment in favor of Wilshire, definitively holding Slack jointly and severally liable for $455,480 plus interest. Wilshire, thereafter, filed a motion for this Court to take judicial notice of the state court’s judgment for purposes of determining Chapter 13 eligibility. See id. We refused to do so because the judgment was entered after the bankruptcy petition was filed. In so deciding, we cited to and implicitly adopted the Sixth Circuit’s holding in Pearson that the bankruptcy court should normally look to the petition to determine the amount of debt owed, checking only to see that the schedules were made in good faith. See Slack, 187 F.3d at 1073. As articulated in Pearson, this rule finds its grounding in both the text of § 109(e) and Congressional intent, and is similar in nature to the subject matter jurisdiction context for purposes of determining diversity jurisdiction. See Pearson, 773 F.2d at 756-57.
We now simply and explicitly state the rule for determining Chapter 13 eligibility under § 109(e) to be that eligibility should normally be determined by the debtor’s originally filed schedules, checking only to see if the schedules were made in good faith. Because the BAP’s decision is premised upon an incorrect application of Pearson, as well as an incorrect interpretation of the eligibility requirements for Chapter 13 relief, we must reverse its decision and assess eligibility de novo.
B. Eligibility Calculation
1. The Henrichsen Debt
Although the bankruptcy court computed $75,973.09 of the $208,000 Henrichsen *983 debt as secured by the residence, Henri-chsen argues that the entire $208,000 claim is unsecured for eligibility purposes. We agree.
In Schedule A, Debtors valued their residence at $325,000, encumbered by a first trust deed in favor of Great Western Bank of $249,026.91 as well as the Henrichsen judgment lien of $208,000. In Schedule C, Debtors listed a $100,000 homestead exemption, allowed under California law. See Cal.Civ.Proc.Code § 704.730(a)(3) (1996). Henrichsen was listed again, this time under Schedule D, showing $132,026.91 of the $208,000 judgment lien as unsecured. Although Debtors clearly recognized that at least $132,026.91 of the Henrichsen judgment lien was underse-cured debt, Debtors failed to list this amount as an unsecured non-priority claim under Schedule F.
To determine the status of Henrichsen’s $132,026.91 non-priority claim, we must look to 11 U.S.C. § 506(a). Through the inclusion of a § 506(a) analysis to define “secured” and “unsecured” in the § 109(e) context, a vast majority of courts, and all circuit courts that have considered the issue, have held that the unsecured portion of undersecured debt is counted as unsecured for § 109(e) eligibility purposes. See, e.g., In re Balbus, 933 F.2d 246, 247 (4th Cir.1991); Miller v. United States, 907 F.2d 80, 81-82 (8th Cir.1990); In the Matter of Day, 747 F.2d 405, 407 (7th Cir.1984); Soderlund, 236 B.R. at 273-74 (BAP 9th Cir.1999). Section 506(a) provides in pertinent part:
An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, ... is an unsecured claim to the extent that the value of such creditor’s interest or the amount so subject to setoff is less than the amount of such allowed claim.
It is true that although § 506(a) speaks in terms of an “allowed claim,” applying § 506(a) to § 109(e) is necessary to prevent “raising form over substance and manipulation of the debt limits” to achieve Chapter 13 eligibility. Soderlund, 236 B.R. at 274. By merely looking at the value of Debtors’ residence, the first deed trust, and the judgment lien, it is clear that Henrichsen’s judgment lien is un-dersecured to a significant extent. The listed value of Debtors’ residence is $325,000. After considering the $249,026.91 first deed trust, only $75,973.09 remains as possible equity to which liens could attach. Since Henri-chsen’s judgment lien is for $208,000, at least $132,026.91 of the judgment lien is undersecured. There is no question that this undersecured debt is to be counted as unsecured for eligibility purposes.
Likewise, a claim secured only by a lien which is avoidable by a declared exemption is unsecured for § 109(e) eligibility purposes. Debtors argue that the $100,000 homestead exemption listed in Schedule C does not render the remaining $75,973.09 of Henrichsen’s judgment lien unsecured for eligibility purposes since eligibility must be determined as of the petition date and Henrichsen’s judgment lien was not avoided, under 11 U.S.C. § 522(f) as impairing the homestead, until later. We do not agree. In In re Slack, 187 F.3d at 1074-75, we stated:
[I]f the amount of the creditor’s claim at the time of the filing the petition is ascertainable with certainty, a dispute regarding liability will not necessarily render a debt unliquidated.... Even if a debtor disputes the existence of liability, if the amount of the debt is calculable with certainty, then it is liquidated for the purposes of § 109(e).... [A] debt is liquidated if the amount is readily ascertainable, notwithstanding the *984 fact that the question of liability has not been finally decided.
Although we were defining the term “liquidated” and not “secured,” we included in the eligibility determination readily ascertainable amounts, even though liability on the debt had not been finally decided. See id. This principle of certainty carries equal force in the present context, where the homestead exemption’s effect on the status of Debtors’ debt as secured or unsecured is readily ascertainable. Debtors declared the $100,000 California homestead exemption on their originally filed schedules, and at the same time listed Henrichsen’s lien as secured by the exempted residence. Even though the lien was not judicially avoided until after the Chapter 13 petition was filed, the fact that Debtors listed both the homestead exemption and the lien on the schedules provides the bankruptcy court with a sufficient degree of certainty to regard the judgment lien as unsecured for eligibility purposes. Thus, the Henrichsen debt should be treated as wholly unsecured on the petition date.[1]
This view is also consistent with the Supreme Court’s statement that “[a]n exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor.” Owen v. Owen, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). By listing the homestead exemption in the originally filed schedules, Debtors have excluded their equity interest in the house from the reach of their creditors, absent a successful objection.
2. General Unsecured Debt
The BAP included in its eligibility calculation $22,919.85 in general unsecured debt. The actual amount listed by Debtors in Schedule F was $40,499.83. Subsequent to filing their petition, Debtors decreased their general unsecured debt obligation to $22,919.85. Since we determine eligibility from the time the petition is filed, and since ordinary events occurring subsequent to the filing (e.g. paying down debt) do not affect the eligibility determination, the correct amount of general unsecured debt is $40,499.83.
3. Priority Unsecured Debt (IRS Payroll Taxes)
In Schedule E, Debtors listed $6,000 in priority unsecured debt owed to the IRS. The BAP included this amount in its eligibility calculation. Debtors assert that this debt should not have been included because (1) it was a business debt and (2) it has subsequently been paid. Because Debtors did not contest inclusion of the IRS payroll taxes before the BAP, see Scovis, 231 B.R. at 343, and exceptional circumstances are lacking, we refuse to consider them now. See In re America West Airlines, 217 F.3d 1161, 1165 (9th Cir.2000) (“Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so.”).
4. Mary Scovis Debt
As detailed in this opinion, the sum of the IRS priority unsecured debt ($6,000), general unsecured debt ($40,- *985 499.83), and Henrichsen debt ($208,000) totals $254,499.83. Since this amount exceeds the statutory limit for unsecured debt under Chapter 13, deciding the true nature of the Mary Scovis debt will not affect Debtors’ ineligibility. Therefore, there is no need to consider whether the Mary Scovis debt was secured or unsecured at the time the petition was filed for purposes of Chapter 13 eligibility.
V. Conclusion
The BAP’s reliance on an incorrect legal interpretation of § 109(e) eligibility requires that we reverse its decision and remand this case to the bankruptcy court for proceedings consistent with this opinion.
REVERSED AND REMANDED TO THE BANKRUPTCY COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

. The dissent takes issue with our failure to include in the calculation accrued interest on the judgment, stating that we "undermineQ Slack by failing to explain why readily ascertainable interest should be excluded from the eligibility calculation.” Whether accrued interest not listed in the originally filed schedules is readily ascertainable is an open question, and one we need not address since it will not affect Debtors' Chapter 13 ineligibility-