**In re Stanley Dean HANSON, Debtor.**

**No. 01-22379 EEB.**

United States Bankruptcy Court,
D. Colorado.

July 25, 2002.

John F. Head, Denver, CO, for moving creditors.

Sonja Ann Becker, Denver, CO, for debtor.

## ORDER

ELIZABETH E. BROWN, Bankruptcy Judge.

THIS MATTER comes before the Court on: (a) the Debtor's "Motion to Alter or Amend Amended Order (Dismissal Order) and to Reinstate Chapter 13 Case or, in the Alternative, Motion to Convert Chapter 13 Case to Chapter 11," (b) the Debtor's "Motion to Stay the Amended Order (of Dismissal) Dated 4–4–2002 Pending Ruling of Motion to Alter or Amend Amended Order (Dismissal Order) and to Reinstate Chapter 13 Case or, in the Alternative, Motion to Convert Chapter 13 Case to Chapter 11," (c) the Response thereto, filed by creditors Janenne M. Wall, Thomas P. Malone & Associates, P.C., Daniel L. Woodrow, Terry Bernuth and James TenBrook (the "Judgment Creditors"), (d) the Debtor's "Motion for Clarification," and (e) the Debtor's Motion to Convert, filed July 12, 2002. The Court hereby FINDS and CONCLUDES as follows:

In his pending motions, the Debtor is essentially seeking three forms of relief: (1) reconsideration of the Court's ruling on Chapter 13 eligibility and the related dismissal of this case; (2) an advisory ruling as to whether the order is stayed by Bankruptcy Rule 7062 and, if so, whether the automatic stay of 11 U.S.C. § 362 remains in effect, and, if not, he requests a stay pending appeal; and (3) as alternative relief, the conversion of this case to a Chapter 11 proceeding.

## I. Request for Reconsideration

■ The Motion to Alter or Amend seeks reconsideration of the Court's ruling that this Debtor is ineligible for Chapter 13 relief. The Debtor argues that the Court erred in considering the judgment liens filed against him as unsecured debt because no action to avoid these judgment liens had yet been commenced. In doing so, the Court relied on the decisions of *In re Scovis*, 249 F.3d 975 (9th Cir.2001) and *In re Toronto*, 165 B.R. 746 (Bankr. D.Conn.1994). The Debtor points out that, in both of these cases, the debtor had

brought an avoidance action prior to the court's ruling. Both courts make clear, however, that the determination should be made as of the petition date and yet the court should consider the lien as avoided in making the determination.

In *Scovis*, the Ninth Circuit specifically considered the timing aspect of a Section 109(e) determination. It acknowledged that in a prior decision, *In re Slack*, 187 F.3d 1070 (9th Cir.1999), it had refused to consider a state court judgment rendered postpetition in making an eligibility ruling, because "the judgment was entered after the bankruptcy petition was filed. In so deciding, we cited to and implicitly adopted the Sixth Circuit's holding in *Pearson* that the bankruptcy court should normally look to the petition to determine the amount of debt owed, checking only to see that the schedules were made in good faith." *In re Scovis, supra*, at 982. Based on this prior ruling, the *Scovis* debtor argued that the court should not consider his ability to avoid a judgment lien recorded against his homestead under 11 U.S.C. § 522(f) in determining his eligibility. Both the bankruptcy court and the Bankruptcy Appellate Panel agreed with the debtor. The Ninth Circuit, however, distinguished the *Slack* decision, stating:

"[A] claim secured only by a lien which is avoidable by a declared exemption is unsecured for § 109(e) purposes.... In *In re Slack*, ... we included in the eligibility determination readily ascertainable amounts, even though liability on the debt had not been finally decided.... This principle of certainty carries equal force in the present context, where the homestead exemption's effect on the status of Debtors' debt as secured or unsecured is readily ascertainable."

*Id.* at 983–84.

■ By this ruling, the Ninth Circuit considered the state of the debtor's financial condition as of the petition date only, without taking into account subsequent events. In determining the amount of unsecured debt on the petition date, it made a summary determination as to readily ascertainable debts. Thus, if the schedules and proofs of claims indicate to a sufficient degree of certainty that the liens on certain secured debts are avoidable, then they should be considered avoided and, therefore, unsecured for eligibility purposes. The court was not considering avoidability of the lien because an action had already been commenced. It expressly refused to consider the impact of subsequent litigation in its *Slack* decision. The holding of the Ninth Circuit can be summarized as follows: (a) look at the debtor's debts as they existed on the date of filing; (b) look at the schedules to see if they are filed in good faith; (c) considering the schedules, proofs of claims and other readily determinable information, make a summary determination as to the nature and amount of the debts. In making this summary determination, it is permissible to consider the avoidability of liens, if there is a reasonable degree of certainty as to their avoidability.

■ This summary determination of avoidability of liens for eligibility purposes comports with congressional intent. As the *Toronto* court noted, the specificity of the dollar limitations of Section 109(e) reflects "a congressional intent that they be strictly applied.... If a debtor was ineligible for chapter 13 relief at the start of the preference period, eligibility cannot be created by a preferential transfer which the debtor subsequently avoids and which is treated under the code as though it had never occurred." *Id.* at 753–54. Otherwise the system is vulnerable to abuse by a debtor who intentionally allows liens to

be filed against his property, then files a Chapter 13 petition based on their status as "secured debt." "That debtor could then . . . avoid the attachment as a preference, and effectively rewrite the § 109(e) unsecured debt limitation." *Id.* at 754.

A review of the pleadings in this case demonstrates that the Debtor attempted to orchestrate this very result. In the instant case, both the Chapter 13 plan and the Debtor's original schedules treated the judgment liens as unsecured. Only after the creditors challenged the Debtor's eligibility did the Debtor amend his schedules to list them as secured. Even after filing an amendment, the schedules were still not filed in good faith. The Debtor's amendments omitted entirely some of these debts which had been reduced to judgment or he listed them at amounts substantially lower than the amounts of the state court awards. While the Debtor could have listed these debts at face value, with an indication that they were disputed, he could not in good faith simply omit them altogether. The Debtor further filed a Motion to Confirm his plan on November 30, 2001 and certified to the Court on January 8, 2002 that he was ready to proceed with a confirmation hearing on it. Despite his amended schedules, the Plan was never amended to recognize the secured status of these claims and to treat them accordingly. The Debtor would have the Court believe that there is a possibility that he would not bring an action to avoid the judgment liens, but his actions speak louder than his words. By his actions, he makes clear that he wants to treat these claims as secured only for the eligibility analysis, but he had no intention of confirming a plan that allows them as secured claims. In short, the Debtor is attempting "to have his cake, and eat it too."

Furthermore, if the Debtor was content to treat these lien claims as secured debt, he would not have filed numerous pleadings, seeking reconsideration of the Court's ruling. On dismissal of this case, he would simply have filed a new case as a Chapter 11 proceeding. The Debtor seeks either reconsideration or conversion to Chapter 11, rather than dismissal and re-filing of a Chapter 11 case, because he knows that with a new case, these judgment liens will no longer be avoidable. The preference period with a new case would not reach back far enough in time to avoid these liens as preferences.

█ As an alternative basis for this ruling, the Court finds that the Debtor exceeds the unsecured debt threshold on the basis that the vast majority of the judgment lien debt is unsecured due to the Debtor's lack of equity in the real property. In other words, there is very little equity in the real estate to which the judgment lien debt can attach. Relying on the real estate values supplied by the Debtor in his Schedule A, and subtracting consensual liens (bank debt) secured against the real estate as set forth in the Debtor's Schedule D, and further subtracting the Debtor's homestead exemption in his primary residence to the extent of remaining equity in the home, leaves only $37,205.00 of equity in the nonexempt property to which the judgment liens can attach. Thus, only $37,205.00 of the judgment lien debt is secured and the balance is unsecured. Combining the unsecured portion of the judgment lien debt, with the undisputed unsecured debt listed on the Debtor's Schedule F, and adding the claims of those creditors who obtained state court awards in the divorce proceeding, but who did not obtain judgment liens prior to the bankruptcy filing (the "Unsecured Divorce Creditors"), aggregates more than $320,000 in unsecured debt. This far exceeds the statutory limit of $290,525. The actual figures appear below:

A. *Billings Property (Homestead)*
$150,000 value listed in Schedule A
− $ 96,416 1st Deed of Trust
− $ 24,354 2nd Deed of Trust

$ 29,230    remaining equity to which the claimed homestead exemption attaches

B. *Smith Road Property*
$ 13,700 value listed in Schedule A
− $ 16,810 1st Deed of Trust
$  −0− equity

C. *Center Avenue Property*
$ 18,903 value listed in Schedule A
− $ 11,844 1st Deed of Trust
$ 7,059 equity

D. *Lehigh Property*
$ 19,685 value listed in Schedule A
− $ 16,734 1st Deed of Trust
$ 2,950 equity

E. *Quebec Property*
$ 19,770 value listed in Schedule A
− $ 11,372 1st Deed of Trust
$ 8,398 equity

F. *Chambers Road Property*
$ 27,402 value listed in Schedule A
− $ 8,604 1st Deed of Trust
$ 18,798 equity

*Total Equity to which Judgment Liens Can Attach:* $37,205

*Total Unsecured Debt of $322,228.74:*

A. Undisputed Unsecured Debts listed on Schedule F $57,386.51

B. Debts Owed to Unsecured Divorce Creditors (represented by Proofs of Claim with attached state court orders to establish these claims) $88,426.25

C. Unsecured Portion of Judgment Lien Debt ($213,620.98 represented by court orders − $37,205 in equity in the nonexempt real estate = $176,415.98)

■ "[A] vast majority of courts, and all circuit courts that have considered the issue, have held that the unsecured portion of undersecured debt is counted as unsecured for § 109(e) eligibility purposes."

*In re Scovis, supra,* at 983. *See also In re Balbus,* 933 F.2d 246, 247 (4th Cir.1991); *Miller v. United States,* 907 F.2d 80, 82 (8th Cir.1990); *In re Day,* 747 F.2d 405, 406–07 (7th Cir.1984). Thus, this Debtor also fails to meet the eligibility requirements due to the combination of his unsecured debt and the unsecured portion of his undersecured debt. This determination can be made by looking only at his schedules and the proofs of claim filed in this case.

## II. Request to Stay the Court's Order of Dismissal

■ Secondly, the Debtor requests a determination as to whether the Order of Dismissal is stayed by operation of Bankruptcy Rule 7062. If so, then the Debtor seeks clarification as to whether the automatic stay of 11 U.S.C. § 362 ("Section 362") remains in effect. If not, the Debtor requests that the Court enter a stay pending appeal. However, neither Rule 7062 nor Section 362 provide a stay in a bankruptcy case which has been dismissed.

The Debtor filed a Motion to Alter or Amend within ten days of the entry of the Order of Dismissal. He seeks a determination of the Court that Fed.R.Civ.P. 62(a) ("Rule 62") applies to stay the effect of this Order. Rule 62 provides that, except in certain receivership, patent and injunction cases, "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry." Bankruptcy Rule 7062 applies Rule 62 to adversary proceedings. Prior to the 1999 amendments to the Federal Bankruptcy Rules of Procedure, Rule 62 applied to both adversaries and contested matters alike, with some specific exceptions. The Editor's Comment to Bankruptcy Rule 7062 states:

Effective December 1, 1999, the Rules were amended to delete these exceptions

from Rule 7062 and to amend Rule 9014 to delete the application of Rule 7062 from contested matters. Certain contested matters were deemed to need the ten day stay, however, and thus the following Rules were amended to include such a stay: 3020(e) (Chapter 11 confirmation), 4001(a)(3) (relief from stay), 6004(g) (use, sale or lease of property, other than cash collateral) and 6006(d) (assignment of executory contracts). Otherwise, Rule 62 only applies only [sic] to adversary proceedings unless the court orders differently.

NORTON BANKR.LAW & PRAC. 2d, Rule 7062, Editor's Comment at p. 515–16 (2002–02). As a result of the 1999 amendments to the Rules, Rule 62 is not applicable to stay the effectiveness of the Order of Dismissal.

■ In addition, upon dismissal, the automatic stay provided by Section 362 was no longer available to protect the Debtor or his assets from efforts by his creditors to collect their debts. *Fish Market Nominee Corp. v. Pelofsky*, 72 F.3d 4 (1st Cir.1995); *In re Weston*, 101 B.R. 202 (Bankr.E.D.Cal.1989), *aff'd* 123 B.R. 466 (9th Cir. BAP 1991), *aff'd* 967 F.2d 596 (9th Cir.1992); *In re Lashley*, 825 F.2d 362 (11th Cir.1987); *In re Frank*, 254 B.R. 368 (Bankr.S.D.Tex.2000).

■ Finally, the Court cannot grant a stay pending appeal of a decision that has not yet been appealed.

## III. Request to Convert to Chapter 11

■ As an alternative, the Debtor has requested that he be allowed to convert his case to a Chapter 11 proceeding, for which relief he claims he is eligible. The Court finds that it cannot grant the request to convert this case to a Chapter 11 proceeding. Regardless of whether the Debtor is eligible to file a Chapter 11 case, conversion of a Chapter 13 case to a Chapter 11 case is not a matter of right. Section

1307(d) of the Bankruptcy Code provides that this type of conversion requires notice and a hearing. Thus, creditors had to have been given an opportunity to be heard on the issue of conversion. Post-dismissal, the Debtor has filed a motion to convert. The time to do so, however, was while the eligibility determination was pending, as an alternative form of relief. The pending motion is untimely and the Court cannot convert a case that no longer exists. The Debtor is free, however, to file a new case at any time.

## IV. Conclusion

Accordingly, the Court hereby ORDERS that:

a. The Motion to Alter or Amend and to Reinstate the Case is DENIED;

b. The Motion to Stay is DENIED;

c. The Motion for Clarification is DENIED; and

d. The Motion to Convert is DENIED.