**In re Khaled M. AHMED, aka Kal Ahmed, aka Khaled Mohammed Ahmed, Debtor.**

**United States of America, Appellant,**

v.

**Khaled Ahmed, et al., Appellees.**

**No. CV 05–8366 DSF.**

United States District Court, C.D. California.

Nov. 13, 2006.

Khaled Ahmed, Pro se.

**ORDER REVERSING BANKRUPTCY COURT ORDER**

FISCHER, District Judge.

**I. PROCEDURAL HISTORY**

In this consolidated bankruptcy appeal, Appellant United States of America ap-

peals the bankruptcy court's confirmation of the first amended Chapter 13 plan of Khaled M. Ahmed ("Debtor"). Debtor filed his first amended Chapter 13 plan on September 22, 2005. Appellant objected to the plan. The bankruptcy court overruled the objections and confirmed Debtor's bankruptcy plan in an order entered on November 1, 2005. Appellant appeals that decision, arguing that Debtor exceeded the debt eligibility limits of 11 U.S.C. § 109(e) and that Debtor did not file his bankruptcy plan in good faith. The Court now REVERSES the bankruptcy court order with respect to Debtor's eligibility for Chapter 13 under 11 U.S.C. § 109(e), and REMANDS the case to the bankruptcy court with instructions to dismiss Debtor's Chapter 13 petition.

Appellant also appeals rulings made by the bankruptcy court in the adversary proceeding on the IRS's proof of claim and Debtor's objections to the claim. The final order in that adversary proceeding was entered on February 7, 2006 and was premised upon the bankruptcy court's confirmation of the Chapter 13 plan. As the Court has now decided that the bankruptcy case should not have been confirmed based on debt eligibility limits, it need not reach issues related to the bankruptcy court's adjudication of the adversary proceeding related to the IRS's claim.

## II. FACTUAL BACKGROUND

On June 25, 1999 the IRS imposed jeopardy income tax assessments against Debtor for 1995, 1996, 1997, and 1998. ER 57.[1] The assessments totaled just over $1.4 million, and the IRS filed tax liens against Debtor for the assessed amounts on the same date. ER 58–59. On August 13, 1999 and August 23, 1999, the IRS issued notices of deficiency to Debtor that explained the calculation of the Debtor's tax deficiency and listed the amount of the assessments. ER 464–503. The IRS claimed that Debtor had unreported income, but the notices of deficiency also indicated that if the income is determined to belong to the taxpayer's related corporations then it will be characterized as constructive dividend income. ER 464–503. Debtor petitioned for judicial review of the jeopardy assessments in federal court. ER 1660. The district court upheld the reasonableness of the jeopardy assessments in an order dated October 8, 1999. ER 1660–78. In November 1999, Debtor petitioned the tax court to review the IRS's determination of the Debtor's tax deficiencies for 1995–1998. ER 2349, 2358.

During the course of litigation in tax court, the parties reached numerous factual stipulations. ER 2349–66. Debtor stipulated that certain business entities were his nominees and that he would be responsible for personal income taxes on the net income of these entities. ER 1875–95. Debtor's stipulation that these entities were his nominees was expressly made for the purpose of determining Debtor's 1997 and 1998 taxable income in the tax case. ER 1875: ¶ 2, 1884: ¶ 20. In addition to the stipulations regarding the nominee status of the corporations, Debtor also stipulated to the amount of income he received, and the IRS stipulated that it would allow Debtor to deduct certain expenses in order for the tax court to arrive at Debtor's net taxable income for the 1997 and 1998 tax years. ER 1875–1917. The Debtor and the IRS also reached stipulations on Debtor's income and deductible expenses for 1995 and 1996. ER 1870: ¶ 14. In the

---

1. ER refers to Appellant's Excerpts of Record, and AER refers to Appellee's Excerpts of Rec-    ord.

bankruptcy court, Debtor declared that the parties are required to use the stipulations regarding income and expenses in the bankruptcy case, because those stipulations were not limited to the tax court case, unlike the stipulations regarding the nominee status of the corporations. AER 78–79.

At the end of May 2003, the IRS believed that, through stipulations, the parties had resolved all outstanding issues related to the amount of Debtor's income and expenses for 1995–1998. ER 1870: ¶ 15. Based on the tax court stipulations, the IRS prepared a Form 4549, Income Tax Examination Changes, to show the calculation of Debtor's tax deficiency based on the agreements regarding income and expenses. ER 1872, 2072: ¶ 4. The Form 4549 was dated July 7, 2003 and showed the calculations used to arrive at the tax, penalties, and interest owed by Debtor. ER 2074–86. The IRS also prepared a less detailed one-page summary of the information presented in the Form 4549. ER 1872, 2070.

With the tax court case still ongoing, almost 5 years after tax court litigation began, Debtor filed his Chapter 13 bankruptcy petition with the bankruptcy court on September 2, 2004. ER 3. Debtor listed the IRS as a secured creditor and an unsecured creditor in his schedules, listing the amount of the claim as $4 million. ER 13, 18. The claim was listed as disputed, contingent, and unliquidated. ER 13, 18. Debtor attached a signed addendum explaining that he was disputing the IRS's claim because the income belonged to eight corporations that were not Debtor's nominee corporations. ER 14.

The IRS filed a proof of claim in the bankruptcy case for unpaid income tax, penalties, and interest in a total amount of just over $13.3 million. ER 56. The majority of the claim was based on tax years 1999 and 2000, amounts that had not yet been assessed by the IRS. ER 57. But almost $2.3 million of the claim was based on tax owed from 1995–1998, though the amount was an increase from the approximately $1.4 million that was assessed in 1999. ER 57. The IRS calculated this new amount for the bankruptcy proof of claim by using the tax deficiency it had calculated in 2003, which was based on the factual stipulations regarding Debtor's income and expenses in the tax court, and accounting for any credits on Debtor's tax account. ER 2088, 2094: ¶ 3. When Debtor's bankruptcy petition was filed in September 2004, the tax court stipulations from May 2003 were still the most recent stipulations in that case. ER 2349–66. The IRS's claim for the 1995–1998 tax years was $868,696 in principal, $711,129 in penalties, and $692,985 in interest. ER 57.

Debtor's Chapter 13 plan was confirmed on November 1, 2005 over the objections of Appellant. ER 2129–30. On December 1, 2005, the tax court issued an opinion setting Debtor's tax deficiency for 1995–1998 at $734,416 in principal. ER 2191–2230. The tax court also found that the entire amount of the principal was subject to fraud penalties. ER 2229.

## III. LEGAL STANDARD

■ This Court has jurisdiction to hear appeals from final judgments and orders of bankruptcy courts pursuant to 28 U.S.C. § 158(a)(1). In considering a bankruptcy appeal, a district court must review findings of fact under a "clearly erroneous" standard; conclusions of law are reviewed *de novo*. *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir.2000). Questions of statutory interpretation are conclusions of law and are reviewed *de novo*. *In re MacIntyre*, 74 F.3d 186, 187 (9th Cir.1996). In determining eligibility for Chapter 13 relief, a bank-

ruptcy court's factual findings regarding the debtor's amount of debt are reviewed for clear error. *In re Slack,* 187 F.3d 1070, 1073 (9th Cir.1999). A bankruptcy court's finding that a debt is liquidated or unliquidated "involves the interpretation of the Bankruptcy Code and is reviewed *de novo.*" *Id.*

## IV. DISCUSSION

### A. *Chapter 13 Debt Eligibility Limits*

To qualify for relief under Chapter 13, a bankruptcy debtor must not exceed the statutory limits on noncontingent and liquidated debts. "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975 . . . may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e) (footnotes omitted).

In the bankruptcy court, Appellant maintained that the IRS's claim for tax deficiencies, at least those that had already been assessed or those that were based on stipulations made by Debtor, pushed Debtor above the statutory debt limits. Debtor argued that the tax deficiencies were unliquidated because five years of litigation had still not produced a ruling on the exact amount of the deficiency and Debtor had significant arguments against liability. The bankruptcy court found in Debtor's favor, at least in part because the court believed that it could not consider the stipulations made in tax court for purposes of determining eligibility for Chapter 13.

In this appeal, Appellant contends that the bankruptcy court erred in ruling that Debtor satisfied the debt eligibility limits because the IRS had already made assessments and issued notices of deficiency in amounts that exceeded the limits. Appellant argues that noticed and assessed tax deficiencies are liquidated debts. Additionally, Appellant maintains that Debtor's stipulations in tax court show that the tax debts were liquidated on the date the Chapter 13 petition was filed and the bankruptcy court erred in not considering those stipulations.

The bankruptcy court's ruling on the debt eligibility issue is not accompanied by explicit factual findings or legal reasoning. However, remanding the case for a more explicit ruling is unnecessary because there is nothing in the record that would support a different result in this case. Debtor exceeded the statutory debt limits for Chapter 13 relief.

### 1. *Amount of Debt*

Debtor urges this Court to review the bankruptcy court's decision as if it were a factual finding regarding the amount of liquidated debt and not a legal determination regarding the characterization of the debt as unliquidated. But Debtor's cleverly phrased argument misses the point. The real issue facing the bankruptcy court was whether the debt was liquidated, not the amount of debt.

Even if the bankruptcy court had made a factual finding that the total amount of debt, liquidated and unliquidated, was below the limits, it would not affect this Court's decision. The record clearly indicates that at the time the Chapter 13 petition was filed, Debtor had total debts exceeding the limits. Any factual finding to the contrary would be clearly erroneous. Without even considering other tax years or other debts, the amount the IRS had assessed against Debtor in June 1999 for tax years 1995–1998 exceeded the debt limits for both secured and unsecured claims. The IRS filed tax liens against Debtor based on tax assessments in the amount of approximately $1.4 million. The notices of tax liens were attached to the

IRS's proof of claim and filed with the bankruptcy court. Debtor himself listed the IRS claim at $4 million on his schedules.

"The term 'debt' means liability on a claim." 11 U.S.C. § 101(12). The Bankruptcy Code defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The Supreme Court has explained that under the Bankruptcy Code the meanings of "debt" and "claim" are coextensive and should be broadly construed. *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990). A debt or a claim is essentially an "enforceable obligation." *Id.* at 559, 110 S.Ct. 2126.

There is no doubt that the $1.4 million tax assessment against Debtor is an enforceable obligation. A debt need not be reduced to judgment, as the statutory text makes clear. But a tax assessment is more than just a debt, it is an established liability and essentially has the force of a judgment. *See Belloff v. Comm'r*, 996 F.2d 607, 614–15 (2nd Cir.1993). This is not to say that a taxpayer cannot dispute the assessment by petitioning for judicial review, as Debtor has done in this case. But Debtor received no relief from the district court and, at least at the time of the bankruptcy petition, had yet to receive any relief from the tax court. Therefore, Debtor had a tax debt of at least $1.4 million when Debtor filed his bankruptcy petition. It does not matter if the $1.4 million is classified as secured debt, unsecured debt, or both. At the time he filed his petition, Debtor had debt in an amount exceeding the debt limits of 11 U.S.C. § 109(e).[2]

### 2. *Contingent or Noncontingent*

Debtor does not argue that his tax debts were contingent. Any argument that tax obligations from more than five years in the past were somehow contingent on a future event would have been without merit. *See In re Mazzeo*, 131 F.3d 295, 303–04 (2d Cir.1997) (finding that a tax debt, even though disputed, is not contingent as the legal obligation arose on the nonpayment of taxes when due). The IRS's claim for unpaid taxes is noncontingent.

### 3. *Liquidated or Unliquidated*

■ The real issue confronting the bankruptcy court was whether the IRS debt was liquidated. That is the main focus of the parties' briefs on appeal. The bankruptcy court found that the stipulations made in tax court could not be considered by the bankruptcy court in determining Debtor's eligibility for Chapter 13 relief. It is not clear from the record whether the bankruptcy court would have come to a different conclusion if it had considered those stipulations. Although this Court does not agree with the bankruptcy court's decision to disregard those stipulations, the assessed tax deficiency was liquidated on the date Debtor's petition was filed even without considering the stipulations.

Debtor initially contends that the tax debt is unliquidated because Debtor's

---

**2.** There is evidence that Debtor has approximately $300,000 in payment credit on his tax debts, based on money collected by the IRS following the assessments. But a total debt of $1.1 million still exceeds the debt eligibility limits if the debt is either wholly secured, as the IRS contends, or only secured in the amount of $284,000, as Debtor contends. Debtor only listed a $4 million tax debt on his schedules and did not specifically identify the amount of the jeopardy assessments or the amount of any payment credits.

schedule listed it as "unliquidated." The Ninth Circuit has stated that Chapter 13 eligibility should be determined by the debtor's originally filed schedules, looking only to see if the schedules were made in good faith. *In re Scovis,* 249 F.3d 975, 982 (9th Cir.2001). But the logical reading of *Scovis* is that the rule applies to the amount of the debt and not the classification of the debt. First, *Scovis* noted that the decision was based on the Ninth Circuit's prior adoption of a Sixth Circuit case, which held that the bankruptcy court should normally look to the petition to determine the "amount" of debt owed. *Id.* (citing *Slack,* 187 F.3d at 1073). Second, although the debtor in *Scovis* listed a debt as secured, the Ninth Circuit did not rely on this language, instead independently determining that it was unsecured, without even mentioning whether the schedules were made in good faith. *Id.* at 983–84.

Debtor in this case scheduled the IRS's $4 million claim as contingent and unliquidated. By simply looking at the schedules it can be established that the amount of the debt exceeded the eligibility limits. If Debtor had not listed at least $1.4 million in tax debt, based on the jeopardy assessments, the schedules would not have been made in good faith. On the other hand, the Court will not rely solely on the schedules to determine whether the debt was liquidated or unliquidated. *Scovis* does not require the Court to do so.[3]

"[T]he question of whether a debt is liquidated turns on whether it is subject to ready determination and precision in computation of the amount due." *Slack,* 187 F.3d at 1073 (quoting *In re Fostvedt,* 823 F.2d 305, 306 (9th Cir.1987) (internal quotation marks omitted)). "[A] debt is liquidated if the amount is readily ascertain-able, notwithstanding the fact that the question of liability has not been fully decided." *Id.* at 1075. An amount is readily ascertainable if it is easily calculable, rather than needing an extensive hearing to determine the amount of the debt. *Id.* at 1074. The Ninth Circuit has yet to apply the rule in *Slack* to a case involving a tax assessment. But the Eleventh Circuit, in a case cited by *Slack,* had previously found that the amount of a tax debt set forth in a notice of deficiency is liquidated because it is readily ascertainable and easily computed through the fixed legal standards set forth in the tax code. *United States v. Verdunn,* 89 F.3d 799, 803 (11th Cir.1996). The tax debt in *Verdunn* was found to be liquidated even though it had not yet been assessed and the debtor was vigorously disputing both liability and the amount of the debt in a tax court proceeding. *Id.* at 802. Other courts agree that disputed tax debts are liquidated. *See Hounsom v. United States,* 325 B.R. 319, 325 (M.D.Fla. 2005) (finding that tax debts were liquidated even though IRS had not issued notices of deficiency for two of the tax years at issue and the debtor was disputing the tax liability in tax court); *In re Barcal,* 213 B.R. 1008, 1014 (8th Cir. BAP 1997) (finding that vigorously disputed tax debts were liquidated because they had been fixed and established by an assessment); *In re Madison,* 168 B.R. 986, 989 (D.Haw.1994) (dismissing the debtor's argument that tax debts were unliquidated because they were subject to protracted and extensive evidentiary hearings in tax court, instead relying on the notices of deficiency to find the debt was liquidated); *In re Lamar,* 111 B.R. 327, 329 (D.Nev. 1990) (rejecting argument that assessed tax penalty was unliquidated because there

---

**3.** Even if the rule in *Scovis* were that broad, it would not change the result here. Debtor also listed the tax debt as contingent without any arguable basis. This suggests that Debtor's classification of the debt was not done in good faith.

was no opportunity for judicial review before it was assessed). The essence of these Chapter 13 tax debt cases is that because tax debts can be calculated precisely, they are liquidated, especially if a notice of deficiency has been issued or an assessment has been made.

Here, the IRS made jeopardy assessments in the amount of $1.4 million, and Debtor was sent notices of deficiency in 1999. Therefore, Debtor had a liquidated tax debt of at least $1.4 million on the date he filed his petition in 2004. The calculation of the amount owed was explained in the notices of deficiency and readily ascertainable through calculations based on the fixed legal standards of the tax law. As previously discussed, a tax assessment is an established liability with the force of a judgment in the amount of the assessment. Taxpayers owe assessments to the IRS unless and until they can prove otherwise. The IRS had already filed tax liens in the amount of the assessment. As in *Slack* and *Verdunn*, Debtor's dispute regarding his liability and the ongoing litigation in tax court does not make the assessment unliquidated.

Debtor argues that this case is different because the IRS is relying solely on allegations that certain corporations were Debtor's nominees or alter egos. Debtor's apparent argument is that the debt is unliquidated because there is a very significant dispute regarding liability. But the significance of Debtor's dispute does not differentiate this case from *Verdunn,* where the debtor vigorously disputed the fraud penalties. *Verdunn,* 89 F.3d at 802. The *Verdunn* court was not persuaded by a similar argument, because it was a dispute regarding liability and not the amount of liability. *Id.* at 802 n. 10. If Debtor is claiming that the tax assessment

was arbitrary or unfair, that argument is unpersuasive in light of the district court's denial of relief from the jeopardy assessment.[4] This Court is not even persuaded that the premise of Debtor's alter ego argument is correct. It appears the IRS was not relying solely on a theory of nominee or alter ego for the assessments for 1995–1998. The notices of deficiency for those years clearly indicated that if the income was found to be corporate instead of individual income, the IRS would proceed under a theory of constructive dividend. While the bankruptcy court may have decided that nominee or alter ego theory was essential for the IRS's claim for the 1999 tax year, there was no such determination by the bankruptcy court for 1995–1998.

Debtor also argues that the IRS's legal theory has made the tax debt difficult to calculate. In support of this position, Debtor refers to the length of the tax court litigation, the length of the record before the bankruptcy court, and the number of calculations required to determine the tax owed. But the bankruptcy court did not examine the merits of the tax assessment for the years 1995–1998, deciding to defer to the judgment of the tax court. Therefore the record before the bankruptcy court is not relevant to a determination regarding the calculation of Debtor's tax debts for 1995–1998. The fact remains that the IRS was able to make the assessments in a certain amount, file notices of tax liens in that same amount, and issue detailed notices of deficiency. Thus, the $1.4 million in tax assessments issued in 1999 was a noncontingent and liquidated debt in 2004 when Debtor filed his bankruptcy petition. Whether that $1.4 million is classified as secured debt, unsecured debt, or both,

---

4. Even though the district court's decision was not a ruling on the merits of the IRS's tax claim, its purpose was to assess the reasonableness of the jeopardy assessment.

does not matter. At the time he filed his petition, Debtor had debt in an amount exceeding the debt limits of 11 U.S.C. § 109(e).[5]

This Court finds that because of the jeopardy assessments and the notices of deficiency, consideration of the tax court stipulations is not essential to the decision that Debtor's tax debt was liquidated. However, those stipulations should have been considered by the bankruptcy court, and reinforce the conclusion that Debtor had liquidated debt in excess of the debt limitations of Chapter 13. At the time Debtor filed his bankruptcy petition, Debtor and the IRS had already entered into numerous income and expense stipulations that would be used by the tax court to determine Debtor's tax liability for 1995–1998. Based on those tax court stipulations, which had been entered in May 2003, the IRS calculated Debtor's tax debt to be almost $2.3 million, including penalties and interest. The IRS submitted this amount in its proof of claim. The $2.3 million tax debt detailed in the IRS's proof of claim was clearly liquidated on the date of Debtor's Chapter 13 petition because it was readily ascertainable from the tax court stipulations. The only significant questions remaining in the tax court litigation were related to the imposition of fraud penalties. As previously discussed, Debtor's dispute with respect to liability for the fraud penalties does not make the debt unliquidated.

The tax court stipulations regarding Debtor's income and allowable expenses were made for the express purpose of calculating Debtor's tax deficiency. They were enforceable agreements in the tax court, the court that would eventually determine the amount of Debtor's tax debt. There was no reason why the IRS should have ignored the facts agreed upon by the parties in tax court when calculating the amount of Debtor's tax obligation for its proof of claim in the bankruptcy case.

Debtor does not disagree. Debtor submitted a signed declaration to the bankruptcy court on August 9, 2005 stating that the tax court stipulations regarding income and expenses were not limited to use in the tax court only. Debtor stated that both parties were required to use those stipulations in the bankruptcy case. Debtor, therefore, does not dispute that the stipulations were to be used by the IRS in calculating Debtor's tax debt for 1995–1998. Based on those stipulations, Debtor's tax debt is readily determinable at almost $2.3 million and clearly liquidated.[6] It does not matter whether the $2.3 million is classified as secured debt, unsecured debt, or both. At the time he filed his petition, Debtor had noncontingent, liquidated debt in an amount exceeding the debt limits of 11 U.S.C. § 109(e).

### B.   Good Faith

Appellant argues that Debtor's Chapter 13 plan should not have been confirmed because it was not filed in good faith.

---

**5.** There is evidence that Debtor has approximately $300,000 in payment credit on his tax debts, based on money collected by the IRS following the assessments. But a total debt of $1.1 million still exceeds the debt eligibility limits if the debt is either wholly secured, as the IRS contends, or only secured in the amount of $284,000, as Debtor contends. Debtor only listed a $4 million tax debt on his schedules and did not specifically identify the

amount of the jeopardy assessments or the amount of any payment credits.

**6.** Debtor's alternative calculations, supposedly based on the tax court stipulations, are not persuasive because they selectively ignore certain stipulations and attempt to introduce facts not agreed on by the parties in the tax court litigation.

Appellant notes that Debtor listed his tax debt as contingent and unliquidated in his schedule, suggesting that Debtor sought Chapter 13 relief when Debtor should have realized he was ineligible for relief and unable to discharge certain debts. The bankruptcy court should examine the totality of the circumstances when deciding whether a debtor's plan was filed in good faith. *In re Goeb,* 675 F.2d 1386, 1391 (9th Cir.1982). It is unclear what the bankruptcy court considered in overruling Appellant's objection to the plan. The Court is unable to address this issue without more explicit factual findings from the bankruptcy court. Here, however, more explicit factual findings appear unnecessary because Debtor is ineligible for Chapter 13 relief.

### C. *Appellant's Submission of the Record*

Debtor seeks summary dismissal of the appeal, arguing that Appellant failed to submit relevant portions of the bankruptcy court record. The Court disagrees and does not believe that the appended excerpts, totaling more than 2,800 pages, were insufficient in any way. The Court had everything needed to address the merits of the appeal.

### V. CONCLUSION

Because Debtor failed to meet the Chapter 13 debt eligibility limits of 11 U.S.C. § 109(e), the bankruptcy court order affirming Debtor's Chapter 13 plan is REVERSED and REMANDED to the bankruptcy court for proceedings consistent with this opinion.

IT IS SO ORDERED.