**In re Larry GROH and Shulamit Hanover, Debtors.**

**No. 09–00653–A13.**

United States Bankruptcy Court, S.D. California.

May 27, 2009.

David E. Britton, Lockhart & Britton, La Mesa, CA, for Debtors.

## ORDER ON TRUSTEE'S OBJECTION TO PLAN AND MOTION TO DISMISS

PETER W. BOWIE, Chief Bankruptcy Judge.

The Chapter 13 trustee, and the debtors, have taken opposite sides of a question which in prior years was largely irrelevant in this part of the country. Specifically, the Chapter 13 trustee objects to confirmation of the debtors' plan and seeks dismissal of the case on the ground that debtors are not eligible for relief under Chapter 13 because their unsecured debt exceeds the limit set forth in Bankruptcy Code § 109(e). The trustee includes in his calculation the claims of debtors' secured creditors to the extent their claims exceed the value of debtors' property—that is, the extent to which the claims are undersecured. The Court holds that this approach is correct in this case and therefore grants the trustee's motion to dismiss.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and General Order No. 312–D of the United States District Court for the Southern District of California. This is a core proceed-

ing under 28 U.S.C. § 157(b)(2)(A),(L) & (O).

## BACKGROUND

On January 23, 2009, Larry Groh and Shulamit Hanover (Debtors) filed a petition under Chapter 13 commencing this bankruptcy case. In their Schedule A Debtors listed their residence with a current value of $459,500.00 (Residence). In Schedule D Debtors indicated that the Residence was subject to a first priority deed of trust securing a claim of $520,000 and a second priority deed of trust securing a claim of $130,000. Debtors' Schedule F showed general unsecured claims of $177,173.00.

The Chapter 13 trustee (Trustee) challenges the Debtors' eligibility to be Chapter 13 debtors on the ground that their unsecured debt exceeds the limit of $336,900 set forth in 11 U.S.C. § 109(e). The Trustee includes in his calculation the undersecured portion of Debtors' secured debts and a potential priority tax debt. A hearing was held on the Trustee's objection to confirmation of Debtors' plan and motion to dismiss. The Court allowed the parties to submit supplemental briefs and took the matter under submission. Thereafter, the Court invited additional briefing on two questions.

## DISCUSSION

■ Section 109(e) provides:

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900 ... may be a debtor under chapter 13 of this title.

The central issue before the Court is whether a claim scheduled as secured by property of the estate, but which, based upon Debtors' schedules, is undersecured or wholly unsecured, is to be included as "unsecured debts" under § 109(e).

As noted above, Debtors' schedules show unsecured nonpriority debt of $177,173.00. If this were all the unsecured debt, they would be eligible under § 109(e). However, Debtors' schedules also show that the "unsecured portion" of the claim secured by the first priority deed of trust is $60,500 and that the entire amount of the debt secured by the second priority deed of trust, $130,000, is "unsecured." If this undersecured debt is included, the Debtors' total unsecured debt is $367,673, which exceeds the $336,900 limit of § 109(e), and Debtors would clearly be ineligible.

The Court raised the issue and sought supplemental briefs because it recognized that in the current economic environment many debtors whose residences had decreased in value potentially would find themselves ineligible for chapter 13 relief. That unfortunate situation appears, however, to be exactly where we are.

In *In re Scovis,* 249 F.3d 975, 982 (9th Cir.2001) the Ninth Circuit held that, absent an indication of bad faith, Chapter 13 eligibility should normally be determined by reference to a debtor's originally filed schedules:

We now simply and explicitly state the rule for determining Chapter 13 eligibility under § 109(e) to be that eligibility should normally be determined by the debtor's original schedules, checking only to see if the schedules were made in good faith.

249 F.3d at 982. In the case at hand, there is no suggestion that Debtors' schedules were not made in good faith. Accordingly, the analysis begins and ends with a review of Debtors' schedules.

In *Scovis,* the Ninth Circuit went on to hold that the unsecured portion of a judgment creditor's undersecured judgment

lien on the debtor's residence is to be counted as unsecured debt under § 109(e) for chapter 13 eligibility purposes. *Id.* at 983.

Debtors appear to attempt to distinguish *Scovis* on the ground that the secured claim in that case was based upon an abstract of judgment, as opposed to a consensual lien. However, the Court finds nothing in the *Scovis* opinion to suggest that it would not apply equally to an undersecured consensual lien. Further, the Court can come up with no rationale for treating the two differently for the purposes of § 109(e). Certainly, the non-consensual lien is subject to avoidance under § 522(f) where a consensual lien is not. However, as discussed below, the court in *Scovis* included the claim both because it was undersecured and because it was subject to avoidance under separate analysis. The latter is not applicable in this case, but the former is.

■ Debtors also argue that the first priority secured claim cannot be bifurcated into a secured and unsecured claim at this stage. However, in *Scovis,* the Ninth Circuit held that the undersecured portion of the judgment creditor's claim was to be "counted as unsecured for eligibility purposes," though no actual bifurcation under § 506 had yet occurred. 249 F.3d at 983. The court in *Scovis* followed what it deemed the majority view:

> [A] vast majority of courts, and all circuit courts that have considered the issue, have held that the unsecured portion of undersecured debt is counted as unsecured for § 109(e) eligibility purposes.

*Id.* The court went on to hold that the remainder of the judgment lien, which was avoidable under § 522(f) as it impaired debtor's homestead exemption, would be counted under § 109(e) even though no avoidance action had even been commenced:

> Even though the lien was not judicially avoided until after the Chapter 13 petition was filed, the fact that Debtors listed both the homestead exemption and the lien on the schedules provides the bankruptcy court with a sufficient degree of certainty to regard the judgment lien as unsecured for eligibility purposes.

*Id.* at 984. In the case at hand, § 522(f) does not come in to play. Nevertheless, the Ninth Circuit's holding further illustrates the rule that the determination under § 109(e) is to be made based solely upon a debtor's schedules, though the procedure to bifurcate or avoid has yet to occur.

Thus, based upon Debtors' schedules, $60,500.00 of the debt secured by the first priority deed of trust is to be counted as unsecured debt, as is the entire $130,000.00 which would otherwise be secured by the second priority deed of trust. This total, when added to Debtors' nonpriority unsecured claims of $177,173.00, is sufficient to exceed the $336,500.00 figure and render Debtors ineligible.

Debtors' schedules also include unsecured priority debt of $35,000.00 in favor of the Internal Revenue Service and the Employment Development Department for "non-dischargeable employer taxes." Though the claims were not scheduled as contingent, unliquidated or disputed, the Debtors have since argued that they should not be included under § 109(e) because they are "contingent" claims which are actually liabilities of their wholly owned corporation, Landscapers Technical Services, Inc., and that no individual liability has been assessed. It appears likely that Debtors have responsible person liability for these claims and that since the corporation, now closed, has no ability to

pay, they will be called upon to pay. However, in light of the inclusion of the undersecured claims in the § 109(e) calculation the Court need not resolve this issue.

As noted, the Court invited additional briefing on two questions. One involved the potential priority tax debt which, as stated above, need not be resolved in this case. The second question asked whether the first position note and trust deed was a purchase money obligation or refinance. If it was a purchase money obligation, the follow-up question was whether the anti-deficiency legislation in California making the debt nonrecourse meant any deficiency should not be counted as a liability of the debtors for purposes of calculating their debt limits under § 109(e). The debtors, through their counsel, have advised that both the first and second position notes and trust deeds were the result of refinancings, not purchase money transactions.

Many states have adopted anti-deficiency legislation over the years, intending to protect consumers from deficiencies arising from foreclosure on their principal residences. If such a deficiency were nonrecourse as to the Debtors, then the question was whether such a nonrecourse claim should be counted in calculating the Debtors' eligibility under § 109(e). The court invited additional briefing because of the importance of the issue and because the parties had not previously addressed it. In its invitation, the court cited the parties to two cases which appeared to answer the question: *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) and *In the Matter of Lindsey, Stephenson & Lindsey,* 995 F.2d 626 (5th Cir.1993).

*Johnson* involved a Chapter 13 case filed after the debtor had discharged his personal liability on the debt secured by real property in Chapter 7. The bank's lien against the collateral remained after discharge, and the debtor proposed to pay it through a Chapter 13 plan. The issue addressed by the Supreme Court was whether the bank's mortgage interest after the Chapter 7 discharge was a "claim" amenable "to inclusion in a Chapter 13 ...." 501 U.S. at 83, 111 S.Ct. 2150. The Court found it was such a claim because the bank still had a right to payment from the proceeds of sale of the property or "[a]lternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy'", which is part of the definition of "claim" in 11 U.S.C. § 101(5).

In support of its conclusion, the Court looked in part to 11 U.S.C. § 102(2) which, as a rule of construction, states: " 'claim against the debtor' includes claim against property of the debtor; ...." The correlative legislative history states:

> Paragraph (2) specifies that "claim against the debtor" includes claim against property of the debtor. This paragraph is intended to cover nonrecourse loan agreements where the creditor's only rights are against property of the debtor, and not against the debtor personally.

*In the Matter of Lindsey, Stephenson & Lindsey,* 995 F.2d 626 (5th Cir.1993) involved a nonrecourse loan that expressly recited that the obligor had no personal liability on the note. The issue came up in a Chapter 12 case and involved whether the obligation was a claim against the debtor notwithstanding its nonrecourse nature for purposes of calculating debtor's eligibility in Chapter 12, which has similar ceilings on debt. The Fifth Circuit applied the same approach as *Johnson* and concluded the nonrecourse note was a "claim" under the Bankruptcy Code. Further, the court concluded that the "note composes part of the partnership's aggregate debt

and disqualifies it from Chapter 12 relief." 995 F.2d at 629.

## CONCLUSION

Debtors' primary argument against inclusion of the $130,000 second position note in calculating the Debtors' unsecured debt was that it represented a consensual lien secured by a trust deed, and even though the Debtors intended to strip off the junior lien as wholly unsecured, they had not done so as of the time of filing. The Debtors acknowledge that they listed the lien in Schedule D as wholly unsecured. While there is some appeal to looking to a debtor's eligibility as of the moment of filing, *In re Scovis*, 249 F.3d 975 (9th Cir.2001) makes very clear that events like obvious lien avoidance should be considered in determining a debtor's eligibility. There is no reason why the same rationale would not apply to a lien strip-off under 11 U.S.C. § 506(a) and § 1322(b) as it did to a lien avoidance under § 522. Nor have debtors offered any persuasive ones.

As noted, Debtors listed $177,173 of unsecured debt in their Schedule F. In addition, they listed their second trust deed obligation to Countrywide, in the amount of $130,000, as wholly unsecured. And, they listed their first trust deed obligation to Litton Loan Servicing as undersecured by $60,500. The total unsecured debt, without considering the priority tax claims, according to Debtors' own numbers and calculated as directed by *In re Scovis*, is $367,673. The case was filed January 23, 2009, at a time when a debtor must have less than $336,900 in unsecured debt to be eligible to participate in Chapter 13.

Since the Debtors' total unsecured debt, without considering the priority tax claims, exceeds the $336,900 ceiling, Debtors are not eligible to participate in Chapter 13.

Since they are not eligible, their Chapter 13 case should be, and hereby is dismissed. *In re Slack*, 187 F.3d 1070 (9th Cir.1999).

IT IS SO ORDERED.