**In re Oscar MUNOZ and Diana Munoz, Debtors.**

No. 09–07087–JM13.

United States Bankruptcy Court, S.D. California.

Jan. 12, 2010.

Charles Shamash, Caceres & Shamash, LLP, Beverly Hills, CA, for Debtors.

Thomas H. Billingslea, San Diego, CA, for Trustee.

OPINION

JAMES W. MEYERS, Bankruptcy Judge.

I

The Chapter 13 Trustee objected to confirmation of the Debtors' plan and sought

dismissal of the case on the grounds that the unsecured debt included on the schedules exceeded the limits for eligibility imposed by 11 U.S.C. § 109(e)[1]. After oral argument on December 11, 2009, the Court ruled that these Debtors are eligible to proceed under Chapter 13. The Court submits this Opinion to address a legal issue that has become more prevalent in the wake of the significant decline in real property values in many areas of the country in the last few years.

## II

## FACTS

The Debtors' schedules contain the following information about their assets and liabilities. They own a residence in Chula Vista, California, which they value at $412,000. The Debtors pledged the house as collateral for two consensual obligations. The senior of these obligations has an outstanding balance of $707,452.25, secured by a trust deed. The Debtors reported $295,452.25 of this debt as undersecured on Schedule D.

The debt secured by the junior second deed of trust is $161,382.93. The Debtors indicated this debt was fully unsecured and they intended to "strip" the lien from the residence, through what has become a common practice based on authority such as *In re Zimmer*, 313 F.3d 1220 (9th Cir. 2002), and *In re Lam*, 211 B.R. 36 (9th Cir.BAP1997).

On Schedule F, they listed unsecured debts totaling $300,969.48. This figure includes the amount of the claim associated with the wholly unsecured second trust deed. The amount of unsecured debts

leaps to $596,421.73, if the undersecured portion of the first trust deed is included. The Debtors filed a motion to determine the value of their real property and to extinguish the lien secured by the second trust deed. That uncontested motion was granted by an order entered on December 11, 2009.

## III

ISSUE PRESENTED Whether the undersecured portion of the debt secured by a consensual first priority trust deed on the Debtors' home should be included in the amount of unsecured debt for eligibility under § 109(e), when that claim is entitled to the protections afforded by the anti-modification provision found in § 1322(b)(2).

## IV

## DISCUSSION

■ Section 109(e)[2] limits Chapter 13 eligibility to individuals that owe noncontingent, liquidated, unsecured debts which total less than $336,900 on the date of the filing of the petition, and secured debt of less than $1,010,650. Eligibility is normally determined based on the figures included in the debtor's original schedules, checking only to see that the schedules were prepared in good faith. *In re Scovis*, 249 F.3d 975, 982 (9th Cir.2001).

■ While adhering to the rule stated above, the *Scovis* decision applied a "principle of certainty", that a judgment lien which impaired a homestead exemption could be avoided under § 522(f). The Court of Appeals held that even though the lien would not be avoided until after

---

1. Unless otherwise stated, all references to Section or § are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2009).

2. These amounts reflect the limits in effect on May 22, 2009, the date the Debtors filed their bankruptcy petition. The amounts are subject to periodic adjustment as provided in § 104.

the Chapter 13 petition was filed, the fact that the debtors listed the homestead exemption and the lien on the schedules provides the bankruptcy court with a sufficient degree of certainty to regard the judgment lien as unsecured as of the petition date for eligibility purposes. *Scovis,* 249 F.3d at 984. Based on the analysis and holding in *Scovis,* the amount of the debt associated with the junior trust deed should be included as unsecured debt in determining eligibility for Chapter 13. *In re Groh,* 405 B.R. 674 (Bkrtcy.S.D.Cal. 2009), *In re Smith,* 419 B.R. 826 (Bkrtcy. C.D.Cal.2009). However, that conclusion does not end the inquiry in this case. Including the debt associated with the junior lien, results in total unsecured debts on the petition date of $300,969.48, which falls within the limit imposed by § 109(e).

■ Eligibility in this case hinges on a decision of whether the portion of the senior debt which exceeds the value of the real property is counted as secured debt or unsecured debt as of the petition date for the purpose of § 109(e). The Supreme Court ruled that § 1322(b)(2) prevents a bankruptcy court from modifying a lien secured only by the debtor's principal residence through a Chapter 13 plan. *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). This antimodification protection applies to the entire claim even if the debt is undersecured, that is, if the amount of the claim exceeds the value of the property. *Nobelman,* 508 U.S. at 331, 113 S.Ct. 2106.

Since the Debtors may not modify the terms of the partially secured senior lien through their Chapter 13 plan, this case is distinguishable from cases such as *Scovis,* 249 F.3d at 983–84 and *In re Soderlund,* 236 B.R. 271 (9th Cir.BAP1999). The Chapter 13 debtors in *Soderlund* and *Scovis* could bifurcate the claims at issues

between a secured claim and an unsecured claim, and reduce the amount of the lien against their property to the amount of the secured claim. Given the holding of *Nobelman,* bifurcation of the debt secured by the first lien on the Debtors' residence into partially secured and partially unsecured claims is a legal impossibility.

This distinction is significant, as expressly mentioned by the Panel:

We note that a different question might be presented if the debts in question were entitled to the protection afforded by § 1322(b)(2), i.e., claims secured only by a security interest in real property that is the debtor's principal residence. *See Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) and *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Here, the debts are not entitled to such protection, accordingly, we do not attempt to resolve that issue.

*Soderlund,* 236 B.R. at n. 5.

The scenario referred to in the quote above is central to this case. Some bankruptcy courts grappling with this issue have determined that if the schedules reflect the claim of a secured creditor as greater than the value of the collateral, then the undersecured portion should be included as an unsecured debt for eligibility purposes, relying on the determination of secured status found in § 506(a)(1). *Groh,* 405 B.R. at 678; *In re Werts,* 410 B.R. 677 (Bkrtcy.D.Kan.2009); *In re Brammer,* 2009 WL 5067632 (Bkrtcy. D.Dist.Col. Dec. 16, 2009) .

However, the final sentence of § 506(a)(1) mandates that the "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposi-

tion or use or on a plan affecting such creditor's interest." The Court of Appeals also instructs us to apply a principle of certainty to consider the effect of other statutes upon the secured status of a claim in determining eligibility. *Scovis,* 249 F.3d at 984. In *Scovis,* the Court applied this principle to treat a secured judgment claim as unsecured for eligibility purposes because the Code allows the debtor to avoid the judicial lien to the extent it impairs the homestead exemption. In this case, we have the opposite scenario. The creditor has a partially unsecured claim, but in the Chapter 13 plan, that claim must be treated as fully secured under § 1322(b)(2) and *Nobelman.*

The Court agrees with the statement contained in the conclusion of *Groh* that "*In re Scovis* ... makes very clear that events like obvious lien avoidance should be considered in determining a debtor's eligibility. There is no reason why the same rational would not apply to a lien strip-off under 11 U.S.C. § 506(a) and § 1322(b) as it did to a lien avoidance under § 522." This analysis squarely supports a decision that the junior lien should be counted as unsecured debt for eligibility purposes. The difference between the wholly unsecured second lien and the partially unsecured first lien is that the latter is not subject to "obvious lien avoidance" because it may not be modified under § 1322(b) and *Nobelman.*

It is at this point the Court must diverge from the decision in *Groh.* Instead, this Court concludes that it is more consistent to consider the certainty of the effect of § 1322(b) and *Nobelman* in classifying a debt as secured or unsecured for eligibility purposes. The Court agrees with a conclusion in the *Smith* decision, that it is more appropriate to treat the debt secured by a lien in the same manner for confirmation and eligibility purposes. The wholly unsecured junior lien should be treated as unsecured for both confirmation and eligibility, while the partially secured senior lien should be treated as secured for both purposes.

## V.

## CONCLUSION

The "undersecured" portion of a lien that cannot be modified in Chapter 13 should not be included in the amount of unsecured debts for purposes of determining eligibility under 11 U.S.C. § 109(e), but as part of the amount of secured debts. The Debtors are eligible to proceed under Chapter 13 and the Trustee's motion to dismiss the case is denied. Counsel for the Debtors is instructed to file an order confirming the Chapter 13 plan within 14 days of entry of this Opinion.