915 F.2d 513
 20 Bankr.Ct.Dec. 1715, Bankr. L. Rep. P 73,657
 In re Thomas M. QUINTANA; Deloris J. Quintana, Debtors.
Thomas M. QUINTANA; Deloris J. Quintana, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE; Bureau of Land
Management; Clemons, Cosho & Humphrey; Norman Easterday;
Farm City Livestock Supply; Connecticut General Life
Insurance Company, et al., Appellees.
 No. 90-35040.
 United States Court of Appeals,
Ninth Circuit.
 Submitted July 9, 1990*.
Decided Sept. 27, 1990.
 
 Richard B. Eismann, Nampa, Idaho, for appellants.
 Clifton R. Jessup, Jr., Dixon & Dixon, Omaha, Neb., for appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before HUG, NELSON and BRUNETTI, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 Appellants Thomas and Deloris Quintana ("Debtors") filed a Chapter 12 Petition in Bankruptcy. Appellee Connecticut General Life Insurance Co. ("Creditor") moved to dismiss the Petition because Debtors' aggregate debts exceeded the $1.5 million statutory limitation for eligibility. After a hearing the bankruptcy court granted Creditor's motion to dismiss, which was affirmed on appeal by the Bankruptcy Appellate Panel ("BAP"). 107 B.R. 234. Debtors timely appeal, and we affirm.
 
 A. Factual and Procedural History
 
 2
 The facts in this case are not disputed. In May 1979 Debtors borrowed $1 million from Creditor. The loan, consisting of a $600,000 note and a $400,000 note, was secured by Debtors' real property in Idaho. Debtors each were jointly and severally liable on both notes; Creditor properly perfected its mortgage and security interests.
 
 
 3
 Debtors defaulted on both notes, and Creditor brought an action in Idaho state court, pursuant to Idaho Code Sec. 6-101, for a money judgment and for a decree of foreclosure and order of sale of its interest. Debtors counterclaimed, alleging that Creditor had wrongfully procured the appointment of a receiver to conduct Debtors' business and that the receiver had damaged the business by acting in a reckless and grossly negligent manner while acting as Creditor's agent. Debtors sought $75,000 in compensatory damages and $1 million in punitive damages.
 
 
 4
 At a summary judgment hearing Creditor waived any right to seek a deficiency judgment against Debtors if, after any foreclosure sale of the mortgaged property, the debt was not fully satisfied. The state court partially granted Creditor's summary judgment motion, entering judgment on both notes in the amount of $1,527,861.89 and issuing a decree of foreclosure and order of sale. The court denied Debtors' summary judgment motion on the counterclaim, ruling that there were genuine disputed issues of material fact.
 
 
 5
 Prior to the foreclosure sale of the mortgaged property, Debtors filed their Petition, scheduling the mortgaged property as having a value of $675,000 (scheduled value) and listing other debts totaling $60,000. Creditor filed a proof of claim in the amount of $1,527,861.89 and then moved to dismiss the Petition because Debtors' aggregate debts exceeded the $1.5 million statutory limitation for eligibility to file under Chapter 12. See 11 U.S.C. Secs. 109(f); 101(17)(A).[1]
 
 
 6
 After a hearing the bankruptcy court granted Creditor's motion to dismiss, ruling that neither Creditor's state court waiver nor Debtors' state court counterclaim affected the amount of the debt and therefore Debtors' aggregate debts exceeded the statutory limitation. The court also ruled that Creditor was not estopped from seeking dismissal of the Petition.
 
 
 7
 The BAP affirmed, ruling that (1) Creditor's waiver of any right to a deficiency judgment in the state court foreclosure action did not limit the amount of the debt to the value of the mortgaged property and (2) the amount of the debt was not reduced by the amount of damages sought in Debtors' state court counterclaim.
 
 
 8
 Debtors appeal this ruling, arguing that at the time of their Petition[2] their aggregate debts did not exceed the Chapter 12 $1.5 million statutory limitation because (1) Creditor's waiver of any right to a deficiency judgment in the state court foreclosure action limited the amount of the debt to the value of the mortgaged property; (2) the amount of the debt should have been reduced by the amount of damages sought in Debtors' state court counterclaim; and (3) Creditor was estopped from seeking dismissal of the Petition. Creditor intends to seek attorney's fees for its involvement in the Bankruptcy case and this appeal, pursuant to the terms of the relevant mortgages, security agreement, and promissory notes, as well as Idaho Code Sec. 12-120.[3]
 
 B. Standard of Review
 
 9
 We review the bankruptcy court's findings of fact for clear error; we review its conclusions of law de novo. Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). The only issues in this case involve the statutory interpretation of federal and Idaho statutes. The interpretation of a federal statute is a question of law reviewed de novo. See, e.g., Saratoga Sav. & Loan Ass'n v. Federal Home Loan Bank Bd., 879 F.2d 689, 691 (9th Cir.1989). The interpretation of a state statute is also reviewed de novo. In re McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).
 
 C. Creditor's State Court Waiver
 
 10
 Debtors first argue that under Idaho Code Secs. 6-101 and 6-108, Creditor's waiver of a deficiency judgment in the state court foreclosure action limited the $1,527,861.89 debt to only the $675,000 scheduled value of the property.
 
 
 11
 Under Sec. 6-101 "[t]here can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real estate." Idaho Code Sec. 6-101 (emphasis added). This provision requires a real property mortgagee to look first to its security before proceeding on the personal debt. First Sec. Bank v. Stauffer, 112 Idaho 133, 137, 730 P.2d 1053, 1057 (Ct.App.1986). See also Selby v. Kelly Rae Apartments, Inc., 634 P.2d 1303 (Okla.1981) (creditor not entitled to personal judgment until deficiency is determined after the mortgaged property is sold).
 
 
 12
 Under Sec. 6-108 the amount of a deficiency judgment cannot be "any amount greater than the difference between the mortgage indebtedness, as determined by the decree, plus costs of foreclosure and sale, and the reasonable value of the mortgaged property." Idaho Code Sec. 6-108. Thus, the mortgaged indebtedness must be determined prior to the foreclosure sale. See Thompson v. Kirsch, 106 Idaho 177, 182, 677 P.2d 490, 495 (Ct.App.1984) (mortgage indebtedness is total amount of principal and interest owed on the note). Moreover, under Sec. 6-108 a deficiency cannot arise or be calculated until after proceeds of the foreclosure sale are applied to the debt, with such deficiency limited to the difference between the fair market value of the mortgaged property and the unpaid amount of the debt. Quintana v. Anthony, 109 Idaho 977, 979, 712 P.2d 678, 680 (Ct.App.1985).
 
 
 13
 Debtors filed their Petition after the state court had issued its $1,527,861.89 judgment and decree of foreclosure and order of sale, but before the actual foreclosure sale of the mortgaged property. Therefore, under Sec. 6-108 there had not yet been any determination of a deficiency, as the property had not yet been sold. See Idaho Code Sec. 6-108; Quintana, 109 Idaho at 979, 712 P.2d at 680.
 
 
 14
 Upon the sale of the property, under Sec. 6-108 Creditor will be entitled to all sale proceeds up to the $1,527,861.89 of adjudged indebtedness, plus costs of foreclosure and sale; Creditor will not be limited to the $675,000 scheduled value of the property. See Idaho Code Sec. 6-108. Similarly, under Sec. 6-108 Debtors will be entitled to any sale proceeds in excess of the indebtedness plus costs. See id. Therefore, until the actual sale of the property, under Sec. 6-108 the amount of the debt is the full $1,527,861.89 of adjudged indebtedness. Creditor's waiver of its right to a deficiency judgment was not yet of relevance. Only after the actual sale, should the sale proceeds fail to satisfy the full $1,527,861.89 indebtedness plus costs, will Creditor's waiver have relevance.
 
 
 15
 Debtors next argue that under the Bankruptcy Code's definitions of "claim" and "debt," because "debt" is a narrower term than "claim," and Creditor waived its "claim" to a deficiency judgment, the "debt" was reduced to the $675,000 scheduled value of the property. See 11 U.S.C. Sec. 101(4), (11).
 
 
 16
 Chapter 12 of the Bankruptcy Code requires that a debtor's "aggregate debts[4] do not exceed $1,500,000." 11 U.S.C. Sec. 101(17)(A) (emphasis added).[5] "Debt" is defined as "liability on a claim." 11 U.S.C. Sec. 101(11). "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. Sec. 101(4)(A). The Supreme Court has held that Congress intended that these terms be coextensive. Pennsylvania Dept. of Pub. Welfare v. Davenport, --- U.S. ----, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990).
 
 
 17
 At the time of Debtors' Petition, under Idaho law Creditor had a "claim" or "right to payment" of the entire $1,527,861.89 of adjudged indebtedness; Debtors had a resulting "debt" or "liability on a claim" for that same amount. See supra at 516. See also 11 U.S.C. Sec. 101(4)(A), (17). Moreover, under Idaho law Creditor's waiver was not yet of relevance, as the property had not yet been sold. See supra at 516. Hence, Creditor did not waive any part of this claim, nor were Debtors released from any part of this debt.
 
 D. Debtors' State Court Counterclaim
 
 18
 Debtors argue that the amount of the debt should be reduced by the amount of damages sought in Debtors' state court counterclaim because Chapter 13 specifically prohibits the consideration of such unliquidated damages, and the absence of such language in Chapter 12 shows a congressional intent to allow consideration of such unliquidated damages in determining Chapter 12 eligibility.
 
 
 19
 There is no qualifying language in Sec. 101(17)(A), nor is there any limitation to "net worth" or "net value." To the contrary, "aggregate debts" under Sec. 101(17)(A) is purposely broad. See supra at 516, note 4. The clear, unambiguous language of 11 U.S.C. Sec. 101(17)(A) does not allow any setoff for an alleged counterclaim, even if the counterclaim is proven and judgment issued.[6] See 11 U.S.C. Sec. 101(17)(A); see also Sylvester v. Dow Jones & Co. (In re Sylvester), 19 B.R. 671, 673 (9th Cir. BAP 1982) (counterclaim does not reduce amount of debt under Chapter 13 eligibility requirements); In re Stedman, 72 B.R. 49, 53 (Bankr.D.N.D.1987) (debtors not allowed to setoff Federal Land Bank stock against debt owed to Bank). To allow such an offset would allow any debtor to simply allege a counterclaim large enough to offset enough of its aggregate debts to fall within the $1.5 million statutory limitation.
 
 E. Estoppel
 
 20
 Debtors last argue that Creditor was estopped from seeking dismissal of Debtors' Petition. Debtors contend that Creditor's state court waiver caused Debtors to file their Petition and that Creditor's motion for dismissal is inconsistent with its earlier state court waiver.
 
 
 21
 Under Idaho law equitable estoppel requires (1) a false representation or concealment of a material fact; (2) that the party claiming estoppel did not know the truth; (3) that the misrepresentation be made with the intent that it be relied upon; and (4) that the misrepresentation result in detrimental reliance by the party claiming estoppel. Theriault v. A.H. Robins Co., 108 Idaho 303, 698 P.2d 365, 369 (1985). See also Union Central Life Ins. Co. v. Schultz, 45 Idaho 185, 261 P. 235, 236 (1927) ("waiver ... will not be presumed or implied unless, by his [the other party's] conduct, the opposite party was misled to his prejudice into the honest belief that such waiver was intended or consented to" (quotation omitted)); Idaho Grimm Alfalfa Seed Growers Ass'n v. Stroschein, 42 Idaho 12, 242 P. 444, 447 (1926) ("it must appear that the adversary party has acted in reliance upon such waiver and altered his position" (quotation omitted)). Quasi-estoppel applies where it would be unconscionable to allow a party to assert inconsistent positions. Schoonover v. Bonner County, 113 Idaho 916, 750 P.2d 95 (1988). See also Evans v. Idaho State Tax Comm'n, 97 Idaho 148, 540 P.2d 810 (1975) (estoppel or quasi-estoppel applies when a party asserts a claim inconsistent with a prior position and the inconsistency detrimentally affects another party relying on the prior position).
 
 
 22
 In the present case estoppel does not apply, as Creditor's state court waiver of its right to a deficiency judgment cannot be considered a representation that it would not move for dismissal of the Petition. Creditor merely waived its right to a state court deficiency judgment, nothing more. Debtors' alleged reliance was upon their interpretation as to the legal effect the waiver would have regarding a Chapter 12 filing, not upon the waiver itself. Quasi-estoppel also does not apply, as Creditor's position in Bankruptcy Court was consistent with its position in the state court foreclosure proceeding. In each instance Creditor sought the property through foreclosure, and was willing to waive any deficiency beyond the proceeds of the foreclosure sale of the property.
 
 F. Conclusion
 
 23
 We find that (1) Creditor's state court waiver did not limit the amount of the debt under Idaho or federal bankruptcy law; (2) the amount of the debt is not offset by the amount Debtors' counterclaim; and (3) Creditor was not estopped from seeking dismissal. Therefore, because Debtors' aggregate debts exceeded the Chapter 12 $1.5 million statutory limitation, the bankruptcy court properly dismissed Debtors' Petition, and the Bankruptcy Appellate Panel properly affirmed.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 Under the Bankruptcy Code, "Only a family farmer ... may be a debtor under chapter 12 of this title." 11 U.S.C. Sec. 109(f). A "family farmer" is an individual or individual and spouse engaged in a farming operation "whose aggregate debts do not exceed $1,500,000." 11 U.S.C. Sec. 101(17)(A)
 
 
 [2]
 The parties do not dispute the use of the date of Debtors' petition for the purpose of determining Debtors' eligibility under Chapter 12. See In re Carpenter, 79 B.R. 316, 320 (Bankr.S.D.Ohio 1987); In re Labig, 74 B.R. 507, 509 (Bankr.S.D.Ohio 1987); In re Orr, 71 B.R. 639, 641 n. 4 (Bankr.E.D.N.C.1987)
 
 
 [3]
 Although Debtors filed a Motion for Stay Pending Appeal and Creditor filed a Motion to Dismiss Appeal with this court, the parties agreed by stipulation, and an order was entered, that Creditor would not execute on the state judgment and decree of foreclosure and order of sale until our decision on Debtors' appeal. With our opinion today, these motions are now moot
 
 
 [4]
 "Aggregate debts" is more inclusive than other Code terms involving aggregations of debts. See, e.g., 11 U.S.C. Sec. 109(e) (defining Chapter 13 requirement as aggregate "noncontingent, liquidated debts"); 11 U.S.C. Sec. 303(b)(1) (defining involuntary petition requirement as claims "not contingent as to liability or the subject of a bona fide dispute"). Even Sec. 101(17)(A) itself uses a more restrictive definition in another clause. See 11 U.S.C. Sec. 101(17)(A) (at least 80% of "aggregate noncontingent, liquidated debts" must arise out of farming operation)
 
 
 [5]
 Debtors contend that this $1.5 million statutory limitation should be liberally construed, noting that the purpose of this chapter is to help needy family farmers and that they are family farmers in lay terms
 Although Chapter 12 was designed to aid family farmers, and perhaps in some instances ambiguities should be construed in favor of the ailing family farmer, see Wright v. Union Cent. Life Ins. Co., 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940) (liberally construing ambiguities regarding forerunner to Chapter 12), Congress clearly indicated its intent to limit the amount of aggregate debt allowable under Chapter 12 to $1.5 million; there is no ambiguity. See In re Stedman, 72 B.R. 49, 54 (Bankr.D.N.D.1987) ("Congress made it clear that Chapter 12 was not to apply to all farming operations, of whatever size.").
 In light of Congress' clear statement of its intention, we have no equitable powers to expand Chapter 12 to include petitons showing aggregate debts in excess of $1.5 million, no matter how small that excess may be. See In re Johnson, 73 B.R. 107, 108 (Bankr.S.D.Ohio 1987) and In re Cronkleton, 18 B.R. 792 (Bankr.S.D.Ohio 1982) (Chapter 12 debt ceiling eligibility requirement is to be strictly interpreted and enforced); Stedman, 72 B.R. at 54 ($1,544,103 in debt disqualifies farmer from Chapter 12 relief). See also Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 210 n. 9, 108 S.Ct. 963, 970 n. 9, 99 L.Ed.2d 169 (1988) (debtors, family farmers in lay terms, apparently could not qualify for relief under Chapter 12 because they failed to meet the Chapter 12 eligibility requirements: "[R]elief from current farm woes cannot come from a misconstruction of the applicable bankruptcy laws").
 
 
 [6]
 While Debtors contend that the counterclaim passes a threshold test for merit, even though the bankruptcy court found that the counterclaim was of "questionable merit," the relative merit of the counterclaim is not of relevance; Sec. 101(17)(A) does not allow any setoff