**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE CAROLYN L. DAVIS,
                                    *Debtor*.

CAROLYN L. DAVIS,
                                    *Appellant*,

v.

U.S. BANK, N.A.; ONEWEST BANK;
and ELIZABETH F. ROJAS,
                                    *Appellees*.

No. 12-60069

BAP No.
11-1692

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kirscher, Markell, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted
December 12, 2014—Pasadena, California

Filed February 17, 2015

Before: Susan P. Graber, Ronald M. Gould,
and Consuelo M. Callahan, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[*]

### Bankruptcy

On appeal from a decision of the Bankruptcy Appellate Panel, the panel affirmed the bankruptcy court's dismissal of a petition under chapter 12 of the Bankruptcy Code.

The panel held that the appellant was ineligible to be a chapter 12 debtor because her "aggregate debts" exceeded the statutory limitation of $3,792,650. The panel held that appellant's "aggregate debts" included unsecured portions of creditors' claims, even though those liabilities had been discharged in an earlier chapter 7 proceeding, because a creditor's claim remains a "debt" so long as it is enforceable against either the debtor or the debtor's property.

### COUNSEL

Richard L. Antognini (argued), Law Offices of Richard L. Antognini, Lincoln, California, for Appellant.

Richard W. Esterkin (argued), Morgan, Lewis & Bockius LLP, Los Angeles, California; and Joshua A. del Castillo (argued) and David R. Zaro, Allen Matkins Leck Gamble Mallory & Natsis LLP, Los Angeles, California, for Appellees.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

GRABER, Circuit Judge:

Debtor Carolyn L. Davis appeals from a decision of the Bankruptcy Appellate Panel ("BAP") affirming an order of the bankruptcy court that dismissed her voluntary petition under chapter 12 of the Bankruptcy Code. The bankruptcy court dismissed Davis' petition because her "aggregate debts" exceeded $3,792,650, the statutory limitation for chapter 12 eligibility in effect at the time that Davis filed her petition. *See* 11 U.S.C. § 101(18)(A) (2010). The BAP affirmed, concluding that Davis' "aggregate debts" included her liabilities for the unsecured portions of her creditors' claims, even though those liabilities had been discharged in an earlier chapter 7 proceeding. *Davis v. Bank of Am., N.A. (In re Davis)*, No. CC-11-1692-MkDKi, 2012 WL 3205431 (B.A.P. 9th Cir. 2012) (unpublished). We agree and, therefore, affirm the dismissal of Davis' petition because she is statutorily ineligible to be a chapter 12 debtor.

Davis owns parcels of real property in California, three of which are relevant to this appeal. According to the schedules that she attached to her chapter 12 petition, Davis owns a 110-acre ranch in Paso Robles, a residence in Cayucos, and a triplex in Paso Robles. Each of those properties is encumbered by a deed of trust (and, with respect to the ranch and the residence, an equity line of credit) in an amount exceeding the property's appraised value. Davis manages the operations on her properties and, in 1997, undertook to establish a vineyard on the ranch. In 2006, however, her efforts failed, and she defaulted on each of the three loans.

In July 2010, Davis filed a voluntary petition under chapter 7 of the Bankruptcy Code.  Thereafter she received a discharge, which released her from personal liability for the unsecured claims associated with the properties.  *See* 11 U.S.C. § 727(b).  The "Explanation of Bankruptcy Discharge" issued by the bankruptcy court "prohibits any attempt [by a creditor] to collect from the debtor" any of the discharged debts.  But the creditors retained the "right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy."

In March 2011, Davis filed a second voluntary petition, this time under chapter 12 of the Code, which contains special provisions for family farmers whose "aggregate debts" do not exceed a statutory dollar amount.  *See* 11 U.S.C. §§ 101(18)(A), 109(f).  At the time of the second petition, the statutory limit was $3,792,650, and the appraised value of Davis' properties totaled about $1.6 million, but the amount of the liens encumbering the properties totaled about $4.1 million.  Thus, on the schedules that she attached to her petition, Davis listed debts of $4.1 million; of that amount, $2.5 million was unsecured.

The bankruptcy court dismissed Davis' petition on the ground that she had "aggregate debts" of $4.1 million, exceeding the statutory limitation for chapter 12 eligibility.  Davis appealed to the BAP, arguing that the unsecured portion of each of her secured creditor's claims should not be included in her "aggregate debts" and, therefore, should not bar chapter 12 eligibility, because her personal liability for those claims had been discharged in her earlier chapter 7 case.  According to Davis, because the secured portions of her creditors' claims were limited to the value of the secured collateral, the value of her "aggregate debts" fell well below

the statutory limitation for chapter 12 eligibility. The BAP affirmed. Applying our decision in *Quintana v. Commissioner (In re Quintana)* ("*Quintana II*"), 915 F.2d 513 (9th Cir. 1990), the BAP concluded that "obligations enforceable against the debtor's property but for which the debtor has no personal liability are nonetheless 'claims' and 'debts' within the meaning of the Bankruptcy Code." *In re Davis*, 2012 WL 3205431, at *5.

Davis timely appeals. We review de novo the BAP's decision and "apply the same standard of review that the BAP applied to the bankruptcy court's ruling." *AmeriCredit Fin. Servs., Inc. v. Penrod (In re Penrod)*, 611 F.3d 1158, 1160 (9th Cir. 2010) (internal quotation marks omitted).

Under 11 U.S.C. § 109(f), "[o]nly a family farmer . . . with regular annual income may be a debtor under chapter 12." Even assuming that Davis, by operating her vineyard, qualified as a "farmer" who had "regular annual income," § 101(18)(A) further limits her eligibility to be a chapter 12 debtor by mandating that her *aggregate debts* not exceed $3,792,650 and that those debts arise mostly out of the farming operation. 11 U.S.C. § 101(18)(A) (2010) (emphasis added).[1] Our cases have not yet addressed the precise question presented here: whether the term "aggregate debts" in § 101(18)(A) includes the unsecured portion of a creditor's

---

[1] The version of § 101(18)(A) currently in effect limits chapter 12 eligibility to individuals with aggregate debts not exceeding $4,031,575. The statutory limitation changes periodically pursuant to 11 U.S.C. § 104(a); the current limitation took effect in April 2013. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code, 78 Fed. Reg. 12,089-01, 12,090 (Feb. 12, 2013).

claim from which the debtor has been discharged in an earlier chapter 7 bankruptcy proceeding.

To answer that question, we first turn to the text of the Bankruptcy Code. *Fireman's Fund Ins. Co. v. Plant Insulation Co. (In re Plant Insulation Co.)*, 734 F.3d 900, 910 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1901 (2014). As noted, at the time Davis filed her chapter 12 petition the Code limited chapter 12 eligibility to family farmers "whose aggregate debts do not exceed $3,792,650." 11 U.S.C. § 101(18)(A) (2010). A "debt" is "liability on a claim." 11 U.S.C. § 101(12). The term "claim" means—

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). "The plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation, regardless of the objectives [sought] in imposing the obligation." *Davenport*, 495 U.S. at 559. In light of those definitions, the Supreme Court has noted that "the meanings of 'debt' and 'claim' [were intended by Congress to] be coextensive." *Pa. Dep't of Pub. Welfare v. Davenport*,

495 U.S. 552, 558 (1990) (citing 11 U.S.C. § 101(12); H.R. Rep. No. 95-595, at 310 (1977); S. Rep. No. 95-989, at 23 (1978)).  The Code does not define the term "aggregate."

In *Johnson v. Home State Bank*, 501 U.S. 78 (1991), the Supreme Court considered the related question of whether a debtor must include a mortgage lien in a chapter 13 reorganization plan after the obligation secured by the mortgage had been discharged in an earlier chapter 7 proceeding.  Relying on the text and legislative history of the Code, the Court characterized the definition of the word "claim" in § 101(5) as "the broadest available definition."  *Id.* at 83 (citing *Davenport*, 495 U.S. at 558, 563–64); *see also Davenport*, 495 U.S. at 558 (noting the "expansive language" that Congress used in the definition of the word "claim"); H.R. Rep. No. 95-595, at 309 (describing the definition of "claim" as the "broadest possible" and noting:  "By this broadest possible definition, and by the use of the term throughout title 11, . . . the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.  It permits the broadest possible relief in the bankruptcy court.").  Applying *Davenport*, the Court had "no trouble concluding that a mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5)."  *Johnson*, 501 U.S. at 84.  According to the Court, a "claim" can be an enforceable obligation against *either* the debtor *or* the debtor's property:

> Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property.    Alternatively,    the

creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation.  Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.

*Id.*

*Johnson* and *Davenport* teach that the meaning of "debt" is coextensive with the meaning of "claim" and, in turn, that "claim" is broadly defined to include any right to payment or any right to an equitable remedy giving rise to a right of payment.  A creditor retains a right to payment, enforceable *in rem*, on the unsecured portion of a loan for which *in personam* liability may have been discharged.  We therefore agree with the BAP that Davis' "aggregate debts" include the unsecured portions of the undersecured mortgage loans that remain enforceable against Davis' property, even though the loans are not enforceable against Davis personally.

Our own precedent likewise supports that reading of the Bankruptcy Code.  In *Quintana v. Commissioner (In re Quintana)* ("*Quintana I*"), 107 B.R. 234, 235–36 (B.A.P. 9th Cir. 1989), *aff'd*, *Quintana II*, 915 F.2d 513, the debtors had borrowed $1 million, which was secured by real property valued at $600,000.  The debtors defaulted on the loan, so the creditor brought an action in Idaho state court for a decree of foreclosure and an order of sale.  *Id.* at 235.  In that action, the creditor waived its right to seek a post-sale deficiency judgment.  *Id.* at 236.  The state court entered summary judgment in favor of the creditor, and the debtors subsequently filed a chapter 12 petition.  *Id.*

The question for the BAP in *Quintana I*, then, was whether the creditor's decision to waive its right to seek a deficiency judgment had the effect of limiting the value of the debtors' "aggregate debts" to the value of the secured collateral. *Id.* The BAP held that it did not, reasoning that the word "claim" should be construed broadly to include all rights to payment, *id.* at 237, and that "[a]lthough, as a practical matter, [the creditor] will only be able to collect the value of the property, it has the right to payment of the entire obligation if under some circumstance, the property is sold for more than its present value," *id.* at 239. We agreed, noting further that, "[u]pon the sale of the property, . . . [the c]reditor will be entitled to all sale proceeds up to the [amount of the loan], plus costs of foreclosure and sale; [the c]reditor will not be limited to the $675,000 scheduled value of the property. . . . Therefore, . . . the amount of the debt is the full $1,527,861.89 of adjudged indebtedness." *Quintana II*, 915 F.2d at 516 (citations omitted).

Our decision in *Quintana II* thus confirms the distinction, established in *Johnson* and *Davenport*, between *in rem* and *in personam* liability in this context, and likewise compels us to conclude that a creditor's claim remains a "debt" so long as it is enforceable against *either* the debtor *or* the debtor's property. Accordingly, the debtor's "aggregate debts" include the amount of that claim, even after a prior discharge from personal liability under chapter 7.

Our decision in *Scovis v. Henrichsen (In re Scovis)*, 249 F.3d 975 (9th Cir. 2001), is not to the contrary. In *Scovis*, we resolved issues that we had avoided in *Quintana II*—namely, whether and to what extent the schedules attached to a bankruptcy petition should be used to determine the debtor's eligibility for relief. 249 F.3d at 981. The

debtors in *Scovis* had petitioned for chapter 13 bankruptcy. We held, among other things, that a debtor's eligibility under chapter 13 "should normally be determined by the debtor's originally filed schedules, checking only to see if the schedules were made in good faith." *Id.* at 982.

Davis relies on *Scovis* to argue that her originally filed schedules demonstrate her eligibility under chapter 12. As noted, those schedules list the total "amount of claim[s] without deducting value of the collateral" as $4.1 million. This amount is also referred to on her schedules as her "liabilities." The schedules go on to list the "unsecured portion" of Davis' total debts as $2.5 million. According to Davis, those figures demonstrate that her *secured* debts total only $1.6 million, well below the statutory limitation for chapter 12 eligibility. That may be true but, as we have explained, for the purposes of chapter 12 eligibility the amount of a debtor's "aggregate debts" includes the entire amount of her creditors' claims, whether secured or unsecured, and whether enforceable against the debtor or only against the debtor's property.

Davis' schedules list claims (liabilities) totaling $4.1 million, which is *above* the cap for chapter 12 eligibility in effect at the time that Davis filed her petition. *See* 11 U.S.C. § 101(18)(A) (2010). As in *Scovis*, we rely on the schedules. They show that Davis is not eligible to be a chapter 12 debtor. The bankruptcy court properly dismissed Davis' petition.

**AFFIRMED.**