FILED

DEC 17 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   WW-14-1395-JuKiF |
| MICHAEL PAUL FREE and HAK SUK FREE, | Bk. No.   3:14-bk-41876-PBS |
| Debtors. | |
| MICHAEL PAUL FREE; HAK SUK FREE, | |
| Appellants, | |
| v. | **O P I N I O N** |
| MICHAEL G. MALAIER, Chapter 13 Trustee,[*] | |
| Appellee. | |

Argued and Submitted on September 25, 2015
at Seattle, Washington

Filed - December 17, 2015

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Paul B. Snyder, Bankruptcy Judge, Presiding

———————————————

Appearances:     Dorothy A. Bartholomew argued for appellants
Michael Paul Free and Hak Suk Free; Samuel J. Dart
argued for appellee K. Michael Fitzgerald.

———————————————

Before:  JURY, KIRSCHER, and FARIS, Bankruptcy Judges.

---

[*] On May 15, 2015, the BAP Clerk's Office entered an order substituting K. Michael Fitzgerald as the successor chapter 13 trustee in place of the former chapter 13 trustee, David M. Howe. After the appeal was heard and submitted, Michael G. Malaier was appointed the successor chapter 13 trustee to Fitzgerald.

JURY, Bankruptcy Judge:

Appellants Michael Paul Free and Hak Suk Free (Debtors) filed a chapter 7[1] petition and received their § 727 discharge. The discharge released them from personal liability on two wholly-unsecured junior liens that encumbered their real property. Before their chapter 7 case was closed, Debtors filed this chapter 13 case intending to strip off the two junior liens from their real property through their chapter 13 plan. The chapter 13 trustee, David M. Howe (Trustee), moved to dismiss their case, arguing that Debtors were ineligible for chapter 13 relief because their unsecured debt, which included the two wholly-unsecured junior liens, exceeded the statutory limit for eligibility under § 109(e). The bankruptcy court agreed and entered an order dismissing Debtors' case. This appeal followed. For the reasons set forth below, we REVERSE and REMAND.

## I. FACTS

The facts are undisputed. Debtors filed a chapter 7 bankruptcy petition on December 23, 2013. Debtors scheduled their real property located on Taylor Street in Milton, Washington as having a current value of $425,000. Such real property is encumbered by three liens: first deed of trust in the amount of $438,621.93 held by Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc.,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532 and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

Mortgage Asset-backed Pass-through Certificates, Series 2003-QS9 (Deutsche); second deed of trust in the amount of $348,481.01 held by Timberland Savings Bank (Timberland); and third deed of trust in the amount of $186,705.68 held by Boeing Employees Credit Union (BECU). Debtors received their § 727 discharge on April 1, 2014.

Before their chapter 7 case was closed, Debtors filed this joint chapter 13 case on April 3, 2014, intending to strip off the wholly-unsecured junior liens of Timberland and BECU (collectively, Junior Lienholders) through their chapter 13 plan. In Schedule A, Debtors listed the value of their real property on Taylor Street as $425,000 encumbered with secured claims in the amount of $990,069.03. In Schedule D, Debtors listed creditors holding secured claims in the amount of $1,018,280.54. In Schedule E, Debtors listed $3,204.76 in unsecured business taxes and in Schedule F listed a student loan creditor holding an unsecured claim in the amount of $4,000. BECU filed a proof of claim asserting a secured claim in the amount of $180,187.80.

Trustee moved to dismiss Debtors' case, arguing that the unsecured debt, including the wholly-unsecured Junior Lienholders' debt totaling $535,186.69, exceeded the unsecured debt limit of $383,175 for chapter 13 eligibility under § 109(e). Relying on In re Shenas, 2011 WL 3236182 (Bankr. N.D. Cal. July 28, 2011), Debtors asserted that the unsecured junior liens should not be included in the unsecured debt calculation of § 109(e) when the claims were unenforceable against Debtors due to their chapter 7 discharge.

At the July 31, 2014 hearing on the matter, the bankruptcy

-3-

court ruled that Debtors were ineligible to be debtors under chapter 13 since their unsecured debts exceeded the statutory limit. The court invited Debtors to submit additional authority supporting their position. The court continued the matter to August 7, 2014, for the purpose of entering a dismissal order. On August 6, 2014, Debtors filed a motion for reconsideration of the July 31, 2014 oral ruling. Because the bankruptcy court had not yet entered an order on Trustee's motion to dismiss, the court construed Debtors' motion for reconsideration as a supplemental memorandum in opposition to Trustee's motion.

On August 14, 2014, the bankruptcy court entered the order dismissing Debtors' case. The court noted that there were cases within the Ninth Circuit that addressed components of the issue before it, but acknowledged that there was no controlling case directly on point. Relying on the holdings in Johnson v. Home State Bank, 501 U.S. 78 (1991), and Quintana v. Commissioner (In re Quintana) (Quintana II), 915 F.2d 513 (9th Cir. 1990), aff'g (Quintana I), 107 B.R. 234 (9th Cir. BAP 1989), and the analysis set forth in Davis v. Bank of America (In re Davis) (Davis I), 2012 WL 3205431 (9th Cir. BAP Aug. 3, 2012)[2] (Quintana I, Quintana II, and Davis I were all chapter 12 cases), and In re DiClemente, 2012 WL 3314840 (D.N.J. Aug. 13, 2012), the bankruptcy court included the Junior Lienholders' unsecured debt in its eligibility calculation despite Debtors' chapter 7 discharge. Therefore, because Debtors were not eligible for chapter 13 due to their unsecured debt exceeding the statutory

---

[2] Aff'd (Davis II), 778 F.3d 809 (9th Cir. 2015).

-4-

limit under § 109(e), the bankruptcy court granted Trustee's motion to dismiss their case. Debtors filed a notice of appeal from the order on the same day.

Debtors subsequently filed a motion to vacate the order of dismissal and impose a stay pending appeal. The bankruptcy court denied their motion.

## II.   JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUE

Did the bankruptcy court err when it counted the wholly-unsecured Junior Lienholders' debt as unsecured debt for purposes of determining chapter 13 eligibility under § 109(e)?

## IV.   STANDARD OF REVIEW

Eligibility determinations under § 109 involve issues of statutory construction and conclusions of law, including interpretation of Bankruptcy Code provisions, which we review de novo. Smith v. Rojas (In re Smith), 435 B.R. 637, 642 (9th Cir. BAP 2010).

## V.   DISCUSSION

**A.   The bankruptcy court erred in relying upon inapplicable and distinguishable case law.**

Section 109(e) limits eligibility for chapter 13 relief to those individuals with regular income who owe on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated,

secured debts of less than $1,149,525.[3] Eligibility debt limits are strictly construed. <u>Soderlund v. Cohen (In re Soderlund)</u>, 236 B.R. 271, 274 (9th Cir. BAP 1999).

On appeal, Debtors ask the Panel to hold that wholly-unsecured liens are not "unsecured debts" for eligibility purposes in a so-called chapter 20 case (a chapter 13 case filed after the debtor receives a chapter 7 discharge). Debtors assert that they do not "owe" Timberland or BECU unsecured "debt" for the purpose of establishing chapter 13 eligibility under § 109(e) because any unsecured debts Debtors owed to their creditors were discharged.

We begin with the relevant words of § 109(e), "unsecured debts." "The term 'debt' means liability on a claim." § 101(12). "The term 'claim' means . . . right to payment . . . ." § 101(5)(A). Thus, there is no "unsecured debt" unless the creditor has a "right to payment" on an unsecured basis.

Next, we turn to the relatively simple analysis of what occurred in Debtors' prior chapter 7 case. Debtors discharged their personal liability to Timberland and BECU in that case when they received their § 727 discharge. Under applicable law, § 524(a)(2), the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." The discharge injunction "provides for a broad injunction against not only legal

---

[3] Under § 104, these monetary limits are periodically adjusted for inflation.

-6-

proceedings, but also any other acts to collect a discharged debt as a personal liability of the debtor . . . . It extends to all forms of collection activity . . . ." 4 Collier on Bankruptcy, ¶ 524.02[2] (Alan N. Resnick and Henry J. Sommer, eds. 16th ed. 2010). Simply put, no creditor can demand payment on a discharged debt, and the debtors have no personal liability to pay such a debt.

The references to "personal liability" in § 524(a) preserve any *in rem* rights a creditor might have in the debtor's property. This is the source of the dogma that liens "ride through" bankruptcy. But the discharge bars any claims that are not secured. Thus, applying the statutory definitions to the words of § 109(e), debts that were discharged in chapter 7 are not "unsecured debts."

The analysis of Shenas, which Debtors cited to the bankruptcy court, is persuasive. In Shenas, chapter 13 debtors who had previously received a chapter 7 discharge sought to strip off a wholly unsecured junior lien against their primary residence. The creditor argued that treating its claim as unsecured rendered debtors ineligible for relief because the debtors' unsecured claims would then exceed the § 109(e) limitation. The bankruptcy court disagreed, ruling that the discharge operated to render the debtors' debt to the creditor unenforceable as a personal liability.

> Being unenforceable as a personal liability, the debt is not allowable as an unsecured claim in this case. Sections 502(b) and 506(a). It follows that the [d]ebtors do not owe any unsecured debt to Green Tree for purposes of the unsecured debt limitation of § 109(e).

-7-

*In re Shenas*, 2011 WL 3236182, at *1.

The bankruptcy court here rejected Debtors' contentions and found that *Shenas* was not persuasive. Instead, it stated that its decision on this issue of first impression was controlled by the Supreme Court's ruling in *Johnson*, the Ninth Circuit's decision in *Quintana II*, and this Panel's rulings in *Quintana I* and *Davis I*. We disagree that those cases control the outcome of the question before us for the reasons stated below and hold that debts for which the *in personam* liability was discharged in a prior chapter 7 should not be counted toward the unsecured debt limit for eligibility under § 109(e).

### 1. ***Johnson*'s limited holding does not support the bankruptcy court's ruling.**

We think the bankruptcy court (and other courts reaching a similar conclusion) erred partly because it misread *Johnson*, so we begin with that Supreme Court case. If anything, we find the words of the Supreme Court supportive of our position that the prior discharge means these "stripped" mortgages do not revert to unsecured debt for eligibility purposes.

In *Johnson*, the debtor, who had previously discharged his *in personam* liability on his mortgage in a chapter 7 case, filed a subsequent chapter 13 case with the intent to pay an *in rem* judgment based on foreclosure litigation through the terms of the plan. Although the bankruptcy court found such use of chapter 13 proper, the district and circuit courts both held otherwise, ruling that because the *in personam* liability for the lien had been discharged, no "claim" remained to be reorganized through the chapter 13 plan. Based on a circuit split, the Supreme Court

-8-

granted certiorari and framed the issue before it: "The issue in this case is whether a mortgage **lien** that secures an obligation for which a debtor's personal liability has been discharged in a Chapter 7 liquidation is a 'claim' subject to inclusion in an approved Chapter 13 reorganization plan." Id. at 82 (emphasis added). Following rules of statutory construction, the Court determined that the mortgage lien was a claim within the terms of § 101(5) because the mortgage lien holder retained a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Id. at 84. In observing that this holding was consistent with other parts of the Code, including § 502(b)(1), the Court stated: "In other words, the court must allow the claim if it is enforceable against **either** the debtor **or** his property." Id. at 85 (emphasis in the original).

In sum, the Court reached the conclusion that the *in rem* right to proceeds from a sale of its collateral meant the secured creditor held a claim which could be addressed in a chapter 13 plan. That is the only determination the Court made. In fact, the Court reinforced the effect of the chapter 7 discharge with regard to an unsecured liability of the debtor: "The Court of Appeals thus erred in concluding that the discharge of petitioner's **personal liability** on his promissory notes constituted the complete termination of the Bank's **claim** against petitioner. Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim - namely, an action against the debtor *in personam* - **while leaving intact another - namely, an action against the debtor *in rem*.**" Id. at 84 (last emphasis added).

///

### 2. The <u>Quintana</u> and <u>Davis</u> line of cases concerning chapter 12 are distinguishable and do not control the current case.

The Ninth Circuit and BAP cases relied on by the bankruptcy court, two before <u>Johnson</u> and two after, reach similar conclusions that, because of the "right to payment" based on a secured lien, a claim - and therefore a debt - exists even though *in personam* liability is unenforceable. However, they apply that holding in the context of determining whether a chapter 12 debtor's "aggregate debts" exceeded the statutory limitation as set by §§ 109(f) and 101(18).[4] We find that <u>Quintana I</u>, <u>Quintana II</u>, <u>Davis I</u>, and <u>Davis II</u>, which speak of "aggregate debts," are distinguishable from the separately calculated secured and unsecured debt limits for a chapter 13 case.

In <u>Quintana I</u> and <u>Quintana II</u>, as pertinent here, a judgment creditor of the debtors had agreed to waive any right to a deficiency judgment against the debtors after sale of the real property subject to its judgment lien, which property was purportedly worth far less than the amount of the judgment. In seeking relief in chapter 12, the debtors asserted that because any personal liability had been waived by the judgment creditor, making it a nonrecourse obligation, only the secured value of the

---

[4] Section 109(f) provides: "Only a family farmer or family fisherman with regular annual income may be a debtor under chapter 12 of this title."

"Family farmer" is defined by § 101(18)(A) as an "individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $4,031,575 . . . ." (This debt limit is as currently effective and has been adjusted periodically under § 104. Also, § 101(18) was § 101(17) prior to 2005.)

-10-

judgment lien, as measured by the value of the property, should count toward the aggregate debt limit for a family farmer. By measuring its debt against only this secured value, debtors contended they were under the debt limit. After the bankruptcy court disagreed and found the debtors ineligible, debtors appealed to the BAP. Observing that the term "aggregate debts" includes "**all** types of debts," the BAP looked to the definitions of debt and claim in § 101 and determined that "debt" had the same broad meaning as "claim." Quintana I, 107 B.R. at 237. It then observed that under the provisions of § 102(2), a claim against property of the debtor is treated as a claim against the debtor.[5] It follows that

> [b]ecause the term claim is coextensive with the term debt, this obligation is a debt of the debtors which is defined by the amount of the claim against the property. Connecticut General's claim against the property is approximately $1.528 million because it has the right to payment of that amount from the property or from the proceeds of the sale of the property.

Id. at 239. The Panel limited its reasoning to the secured nature of the debt; nowhere does it state that any portion survives as an unsecured liability. Quintana I does not suggest the deficiency claim is an unsecured obligation, nor did it need to, since it was looking at only "aggregate debts."

In affirming the BAP, the Ninth Circuit took a more limited approach. After determining that debt and claim were equivalent, it looked to Idaho law to determine the effect of Connecticut General's waiver of deficiency and found that "there had not yet

---

[5] The BAP's reasoning in Quintana I is similar to the Supreme Court's in Johnson but it should be noted that this decision in 1989 predated Johnson which was issued in 1991.

-11-

been any determination of a deficiency, as the property had not yet been sold." Quintana II, 915 F.2d at 516. Therefore, only after an actual sale would the waiver have any relevance. Debtors were not released from any liability and the entire claim counted against the aggregate debt limit. Id. at 517. Like our Panel in Quintana I, the appellate court did not address what would happen to any remaining claim after the *in rem* liability was exhausted.

The Davis cases are similarly distinguishable. After discharging her personal liability in a chapter 7, Ms. Davis filed a chapter 12 case in which she scheduled secured debt which exceeded the § 101(18) aggregate debt limit. In her amended plan, she proposed to pay her secured creditors only the value of their collateral, which collectively was substantially less than the debt limit.[6] This plan drew an objection from secured creditor Bank of America, arguing among other things that the debtor was ineligible based on the scheduled debt. Ms. Davis countered that because her personal liability had been discharged, the aggregate debt was only that secured by the property as valued, substantially less than the debt limit. The bankruptcy court agreed with Bank of America and debtor appealed to the BAP, Davis I. The BAP looked to the prior holdings in Quintana I and Quintana II and reasoned that because the entire amount of the debt was part of the secured liens:

> the full amount owed continues to be a claim against the collateral, and hence a 'debt' under the Bankruptcy

---

[6] Because of her prior chapter 7 discharge, she scheduled no unsecured debt.

-12-

Code, unless and until the collateral is sold. Furthermore, as stated in Johnson, a prior chapter 7 discharge only extinguishes one 'mode of enforcing' the claim but does not extinguish the claim itself (or any portion thereof).

Davis I, 2012 WL 3205431, at *5. Davis I looked only at the aggregate debt, not an unsecured deficiency.

The Ninth Circuit in Davis II focused the inquiry: "whether the term 'aggregate debts' in § 101(18)(A) includes the unsecured portion of a creditor's claim from which the debtor has been discharged in an earlier chapter 7 bankruptcy proceeding." Davis II, 778 F.3d at 812. Relying on Johnson and an earlier Supreme Court decision, Pennsylvania Department of Public Welfare v. Davenport, 495 U.S. 552 (1990), it concluded:

Johnson and Davenport teach that the meaning of "debt" is coextensive with the meaning of "claim" and, in turn, that "claim" is broadly defined to include any right to payment or any right to an equitable remedy giving rise to a right of payment. A creditor retains a right to payment, enforceable *in rem*, on the unsecured portion of a loan for which *in personam* liability may have been discharged. We therefore agree with the BAP that Davis' "aggregate debts" include the unsecured portions of the undersecured mortgage loans that remain enforceable against Davis' property, even though the loans are not enforceable against Davis personally.

Davis II, 778 F.3d at 813. The court of appeals very carefully distinguished between the available *in rem* relief and the unavailable *in personam* liability, so to stretch its holding to mean the debt revives as an unsecured claim is inconsistent with the decision.

In sum, because these four cases are chapter 12 cases that consider only the aggregate debt limit, and none of them speak to reviving discharged *in personam* liability, they are not controlling here.

-13-

### 3. <u>Scovis</u> and <u>Smith</u> are also distinguishable and would lead to an inequitable result.

Under the holding of <u>Scovis v. Henrichsen (In re Scovis)</u>, 249 F.3d 975 (9th Cir. 2001), and <u>Smith v. Rojas (In re Smith)</u>, 435 B.R. 637 (9th Cir. BAP 2010), when determining a debtor's chapter 13 eligibility, the undersecured portion of a secured creditor's claim should be counted as unsecured debt. <u>In re Scovis</u>, 249 F.3d at 983. Although <u>Scovis</u> was speaking about the unsecured portion of a partially secured obligation, its holding was extended to wholly unsecured junior trust deeds in <u>Smith</u>. <u>In re Smith</u>, 435 B.R. at 648-49. However, in both of these cases, the chapter 13 case was not preceded by a prior chapter 7 where the *in personam* liability had been discharged;[7] the obligation of the debtor to pay the undersecured or wholly unsecured claims in *pari passu* with other unsecured creditors through the plan was intact. If one makes that reclassification of debt in the chapter 20 context, one is reviving the liability which has been discharged. It makes no sense that a creditor whose *in personam* claim is unenforceable in any other context due to the § 727 discharge should fare better in the subsequent chapter 13 case.[8]

_____

[7] Although the chapter 13 proceeding in <u>Scovis</u> had been preceded by a chapter 7, the debt at issue had been found nondischargeable and therefore the effect of the discharge injunction was not in play.

[8] The Ninth Circuit's recent decision by which it confirmed the ability of a chapter 20 debtor to strip wholly unsecured junior liens, <u>HSBC Bank USA v. Blendheim (In re Blendheim)</u>, 803 F.3d 477 (9th Cir. 2015), carefully distinguishes a discharge from *in rem* voidance provisions: a strip off of a lien is not the same as receiving a discharge because the discharge releases *in*

(continued...)

-14-

**B.  Debts for which the *in personam* liability was discharged in a prior chapter 7 cannot be counted toward the unsecured debt limit for eligibility under § 109(e).**

Although in a slightly different context - that of the allowability of an unsecured claim filed by a creditor with a stripped off second where personal liability had been previously discharged in a chapter 7 - the well-reasoned decision of the bankruptcy court in In re Rosa, 521 B.R. 337 (Bankr. N.D. Cal. 2014), supports our opinion.  In Rosa, the chapter 20 debtor, similar to the debtors here, used § 506(a) to value her residence to determine whether EMC Mortgage, LLC (EMC) had an allowed secured claim in her chapter 13 case.  After the court determined that, based on its valuation, the EMC claim was not supported by an equity in the property, the debtor objected to EMC's unsecured claim in conjunction with plan confirmation.  She argued that her chapter 7 discharge terminated her personal liability and that the claim should be disallowed.  The chapter 13 trustee objected to plan confirmation, asserting that the unsecured claim was resurrected after the valuation motion found the secured claim wholly unsecured.

The court observed that although § 101(5)(A) defines a claim and § 506(a) prescribes how a secured claim is to be treated, neither determined whether such claim was allowed for payment purposes.  That determination was to be made if an objection was filed under § 502(b), as the debtor filed here.  Because the

---

[8](...continued)
*personam* liability but does not affect the *in rem* rights of the lien.  Id. at 494.  The Circuit says nothing about resurrecting unsecured liability after the lien strip.

-15-

personal liability had been discharged in the prior chapter 7, the court applied the discharge injunction provided by § 524(a)(2) to come to the unremarkable conclusion that no allowed claim remained for payment purposes in the chapter 13. In arriving at this conclusion, the bankruptcy court found that its analysis did not run afoul of Johnson: "The Supreme Court did not hold nor suggest that this allowed secured claim would, by definition, be an allowed, unsecured claim if a § 506(a)(1) motion renders the secured claim valueless." In re Rosa, 521 B.R. at 342.

We recognize that Dewsnup v. Timm, 502 U.S. 410 (1992), held that a chapter 7 debtor could not "strip down" - or reduce - a partially underwater lien under § 506(d) to the value of the collateral. Id. at 412-13, 417. This prohibition was recently extended to a wholly unsecured junior lien by the Supreme Court in Bank of America v. Caulkett, 135 S. Ct. 1995, 1999 (2015). Parties have argued against allowing a chapter 20 debtor to "two-step" around the Dewsnup/Caulkett restrictions - i.e., first filing a chapter 7 to discharge the personal liability, then following it with a chapter 13 to value the property and strip the remaining *in rem* claim - as bad faith. And it well may be, but that argument is better addressed by filing an objection to confirmation based on bad faith rather than eligibility. If such an objection is made, then the bankruptcy court must consider on a case-by-case basis the totality of the circumstances standard, as directed in Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999), and Drummond v. Welsh (In re Welsh), 711 F.3d 1120, 1127-30 (9th Cir. 2013), in determining whether such

-16-

bad faith exists.

That serial filings are not per se bad faith was first addressed by the Supreme Court in Johnson where the creditor maintained that such filings evaded the limits that Congress intended to place on these remedies. The Court disagreed: "Congress has expressly prohibited various forms of serial filings. . . . The absence of a like prohibition on serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions, convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief." Johnson, 501 U.S. at 87.

The Ninth Circuit earlier embraced the substance of this holding in Downey Savings and Loan Association v. Metz (In re Metz), 820 F.2d 1495, 1497 (9th Cir. 1987), and recently reiterated it in In re Blendheim, 803 F.3d 477, where the court went so far as to find no *per se* bad faith even if a chapter 13 petition was filed while the chapter 7 was still pending. There, the court recognized that a debtor should be allowed to use the tools in the tool box if done so with a good-faith purpose. 803 F.3d at 500.

Finally, we do not see how the purposes of a chapter 13 reorganization are met by counting the discharged unsecured obligations of the chapter 20 debtor in the eligibility calculation. Assuming the case is filed in good faith and proper chapter 13 purposes – such as curing an arrearage on a first mortgage or paying priority tax debt - are present, it makes no

-17-

sense to include in the debt limit calculation a claim for which the right to payment has been discharged.  Neither the Code nor case law compels inclusion of the discharged *in personam* liability in such calculation.

## VI.   CONCLUSION

For the reasons stated above, we REVERSE the decision of the bankruptcy court dismissing the chapter 13 for ineligibility and REMAND with instructions to vacate the dismissal and reinstate the case.